David S. Grossman
WSBA No. 18428
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse Street
Walla Walla, WA  99362
Telephone:  (509) 525-8130
Telefax:  (509) 525-8726

William L. Choquette
ABA No. 7410066
Choquette & Farleigh, LLC
629 L Street, Suite 101
Anchorage, Alaska  99501
Telephone:  (907) 274-4626
Telefax:  (907) 274-9819

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>THOMAS R. MUNGLE and MARLENE C. MUNGLE; DOWN RIGGER CORP.; SIERRA VIEW HOLDING, INC.; ROBERT and JOAN DIDIER; INVERSIONES QUIZARRRA, S.A.; DAVID ALLISON; AND HOWARD JAEGER,<br><br>        Defendants. | NO. A02-0054 CV (JKS)<br><br>MEMORANDUM OF DEFENDANTS THOMAS R. MUNGLE AND MARLENE C. MUNGLE IN RESPONSE AND OPPOSITION TO UNITED STATES' MOTION TO CORRECT ORDER AND FOR ENTRY OF JUDGMENT AGAINST THOMAS R. MUNGLE AND MARLENE C. MUNGLE |

Defendants Thomas R. Mungle and Marlene C. Mungle (hereinafter the "Mungle Defendants"), by their undersigned attorneys, respectfully submit this Memorandum in opposition to the United States' Motion to Correct A Clerical Error in the Court's Order of June 11, 2003 and Motion for Entry of Judgment Against Thomas R. Mungle and Marlene C. Mungle.

The Mungle defendants also rely on the Declaration of David S. Grossman and the Declaration of Thomas R. Mungle, filed herewith, in support of their opposition to the United States' motion. For the reasons stated herein and in the supporting Declarations, the United States' Motion should be denied.

### I. SUMMARY OF ARGUMENT

The United States moves the Court to "correct" its June 11, 2003, Order, which determined the liability of the Mungle Defendants for income tax, penalties and interest for the years 1988 through 1994. The liability was ruled to be $151,330.40. The government contends that the Court made a "clerical error," which may be corrected now, some three-and-one-half years after the Court's decision. In reality, the Order is a Judgment which, for the following reasons, may not be corrected pursuant to Rule 60(a), Fed.R.Civ.P.

Fed.R.Civ.P. 60(a) permits the Court in its discretion to correct clerical orders in Judgments or Orders *sua sponte* or upon motion by any party. A correctable clerical error exists where the judgment or order in question does not reflect what the Court intended to write. Here, the June 11, 2003, Order granted precisely the relief the government sought and was supported by the evidence.

The government's motion for summary judgment stated that it sought "to reduce assessments to judgment against Thomas Mungle and Marlene Mungle…." The evidence submitted in support of the motion consisted of the Declaration of Keith S. Blair, to which was appended Certificates of Assessment, Payments and Other Matters establishing the Mungles' account balances for the years 1988-1994 (as well as for the years 1982 and 1985-1987). The total balance reflected by the Certificates of Assessment for tax years 1988-1994 was $151,410.40, a mere eighty dollars different from the Court's determination of a liability of $151,330.40. Thus, the Court's Order granted the government the relief it sought and which its

evidence supported. There was no clerical error of the magnitude claimed by the government in its motion.[1]

The Court's June 11, 2003, Order was, in reality, a judgment. It provided that "the assessments against the Mungles for 1988-1994 *are reduced to judgment in the amount of $151,330.40 as of January 15, 2002,* plus interest and statutory additions accrued thereafter less any applicable credits." (emphasis added). If the United States believed the Court's judgment was in error, the proper and only procedure for correction would have been to file a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59. Such a motion was required to have been filed within ten days, and the time for doing so has long since passed.

Regardless of the merits of the government's Rule 60(a) motion, the parties reached agreement in 2005 regarding the amount due to the United States. The agreed amount needed to be adjusted only for a computation of interest due from January 15, 2002 and January 5, 2004, and taking into account credits applied from the proceeds from the sale of certain property in Hawaii and Southeast Alaska. The agreement is evidenced by e-mail communications between counsel for the Mungles and the Department of Justice trial attorney assigned to the case, and is further evidenced by no fewer than six Status Reports filed by the Department of Justice over an eight-month period, each of which confirmed and represented to the Court that "[t]he Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities." The Court should not permit the United States to now repudiate its agreement.

Finally, to the extent it is determined that there was no agreement on the amount due, or that the Justice Department officials affirming the agreement had no authority to do so, there was

---

[1] The Mungles concede that there does appear to be a minor clerical error in totaling the amounts set forth in the Certificates of Assessment, and correction of the Order to reflect the correct amount of $151,410.40 would be

3

a misrepresentation made by the Justice Department upon which the Mungles justifiably relied, and the Justice Department and government are equitably estopped from claiming that any different amount is due and owing from the Mungles.

## II.    INTRODUCTION AND PROCEDURAL HISTORY

### A.    Introduction.

The United States filed its complaint in this tax case on March 14, 2002. The complaint sought to reduce to judgment assessments for income tax, penalties and interest made against defendants Thomas R. Mungle and Marlene C. Mungle for the taxable years 1982 and 1985 through 1994. The government's complaint also sought to foreclose the federal tax liens attaching to two parcels of undeveloped land – Parcel A and Parcel B – located in Southeast Alaska and attaching to the Mungles' residence located in Juneau.[2]

### B.    Summary Judgment.

On December 30, 2002, the United States filed its Motion for Summary Judgment, seeking, among other things, judgment with respect to the Mungles' tax liabilities. On June 11, 2003, the Court entered its decision on the government's motion. That decision is reflected in a written Order which granted in part and denied in part the United States' motion. With respect to the tax years 1982, 1985, 1986 and 1987, the Court ruled that genuine issues of material fact precluded summary judgment. With respect to the tax years 1988 through 1994, the Court ordered that the United States shall have judgment in the amount of "$151,330.40 as of January 15, 2002, plus interest and statutory additions accrued thereafter less any applicable credits." As its conclusion, the Order provided: "the assessments against the Mungles for 1988-1994 *are*

---

appropriate under Rule 60(a).
[2] A related case was filed with the U.S. District Court for the District of Hawaii seeking to foreclose the tax liens attaching to a condominium in which the Mungles had an interest. The condominium was sold and the proceeds applied against the Mungle Defendants' federal tax liabilities in 2004.

*reduced to judgment in the amount of $151,330.40 as of January 15, 2002*, plus interest and statutory additions accrued thereafter less any applicable credits." (emphasis added). See Declaration of David S. Grossman ¶¶ 10-11  (hereinafter "Grossman Decl.").

### B.  Stipulation as to Tax Liability for Remaining Years.

Following the Court's decision on the government's Motion for Summary Judgment, counsel for the Mungle defendants sought to arrange for an IRS Revenue Agent to meet with the Mungles' Certified Public Accountant in an attempt to reach agreement as to the amount remaining due for the 1982 and 1985-1987 tax years. Grossman Decl. ¶10-11. Those efforts culminated in the parties' agreement and the filing of a Stipulation to Reduce Assessments to Judgment. That Stipulation provided that the Mungles' tax liabilities for 1982 and 1985-1987 may be reduced to judgment in the amount of $427,158.15 as of January 5, 2004, plus interest and statutory additions accrued thereafter. The Court entered the Stipulation as a Judgment of this Court on March 24, 2004.[3] Grossman Decl. Ex. B.

Thus, as of March 24, 2004, the Mungles' liability for federal tax, interest and penalties for the years in suit had been determined to total $578,488.55, as follows:

A.   $151,330.40, together with interest and statutory additions accruing after January 15, 2002; and

B.   $427,158.15, together with interest and statutory additions accruing after January 5, 2002.

### C.  Credits from Sale of Properties and Application of Proceeds.

Once the Mungles' tax liabilities were determined and fixed, the Mungles' attorney and government counsel agreed to proceed with sale of the Hawaii condominium and Parcels A and B, with application of the proceeds toward the Mungles' outstanding tax liabilities. Thomas

---

[3] The liabilities for 1982 and 1985-1987 are not at issue in the instant motion.

Mungle contemplated that after the proceeds from the sale of the three properties were applied, the remaining balance owing would be an amount that he could obtain through refinancing the Mungles' Juneau home and home office. See Declaration of Thomas R. Mungle ¶ 6 (hereinafter "Mungle Decl."). Keith Blair, then lead counsel for the United States, agreed to proceed in this manner. Grossman Decl. ¶ 13.

The condominium was sold, generating a payment to the United States in 2004 in the amount of $271,608.48. Grossman Decl. ¶ 14. Thereafter, Parcels A and B, in Southeast Alaska, were foreclosed upon and sold, generating payments to the United States in the amounts of $52,241.77 and $48,161.84, respectively. See Order Confirming Sale, 1/14/2005. Thus, credits totaling $372,012.09 were applied against the outstanding balance of $578,488.55 owed by the Mungles. This left a balance due of $206,476.46, plus interest that accrued from and after January 15, 2002 and January 5, 2004. Counsel for the Mungles computes the total amount, as of November 1, 2006, to be $235,149.36. See Grossman Decl. ¶ 40.

### D. Agreement As to Remaining Amount Due.

In 2005, the Mungles began efforts to refinance their Juneau residence. Mungle Decl. ¶ 9. Their goal was to access their equity to obtain funds with which to pay the remaining balance owing to the IRS. On June 10, 2005, counsel for the Mungles spoke with John Snyder, a Justice Department attorney who had taken over responsibility for the case from Keith Blair. Mr. Snyder stated that he was in the process of obtaining a payoff figure from the IRS for the Mungles' tax liabilities. Grossman Decl. ¶ 20. On July 19, 2005, Mr. Grossman attorney wrote to Mr. Snyder stating that after crediting the proceeds from the sale of the Maui condominium, but before crediting proceeds from the sale of Parcels A and B, he computed the amount due to the IRS, with interest, at $346,920.43. Id. ¶ 21. In an e-mail dated August 22, 2005, Mr. Snyder replied, "I think that all the calculations you've provided are correct. Please call me this week to

discuss the logistics of payment." Grossman Decl. ¶ 23. Thereafter, the Mungles' efforts to refinance were delayed because of the need for repairs, reappraisals and a survey. Mungle Decl. ¶ 9.

Over an eight-month period from September 1, 2005 to May 5, 2006, the Department of Justice, Tax Division, filed no fewer than six status reports with the Court advising of the status of the refinance efforts and representing that "[t]he Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities." Mungle Decl. ¶¶ 10-11; Grossman Decl. ¶ 24-25 & Ex. D-I.

By the time the Mungles were in a position to complete the refinance process, Mr. Snyder had followed the lead of Keith Blair and left the Department of Justice. Mr. Grossman wrote the Department of Justice Section Chief advising that a final resolution of the case was near, and asking that the file be reassigned as soon as possible so the case could be concluded. Grossman Decl. ¶ 30 & Ex. J. Thereafter, counsel was advised that Goud P. Maragani had taken over the file from Mr. Snyder. Mr. Maragani proceeded to attempt to obtain payoff figures from the IRS, but the tax agency repeatedly provided him with widely varying amounts, which ranged from $159,513.63 to approximately $578,000. See Mungle Decl. ¶ 12; Grossman Decl. ¶ 33-34, 41-42. Mr. Maragani expressed to Mr. Grossman his frustration at the IRS's inability to arrive at a consistent payoff figure. Grossman Decl. ¶ 42.

Ultimately, Mr. Maragani stated that the IRS had determined that it believed the Court's 2003 Order was in error and did not provide for all interest the government claimed was due from the Mungles with respect to the assessments made against them. Nearly four years after filing its Motion for Summary Judgment, and almost three and one-half years to the date the

Court issued its Order, the United States filed its motion to "correct" what it contends was a clerical error in the Court's Judgment of June 11, 2003.

### III.   LEGAL AUTHORITY AND ARGUMENT

#### A.   The Court's June 11, 2003 Order Does Not Contain a Clerical Error.

The government brings this motion under Fed.R.Civ.P. 60(a), which provides in part:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

With respect to Rule 60(a), Wright, Miller and Kane comment:

> Subdivision (a) deals solely with the correction of errors that properly may be described as clerical or arising from oversight or omission···· When the change sought is substantive in nature, such as a change in the calculation of interest not originally intended, the addition of an amount to a judgment to compensate for depreciation in stock awarded, or the broadening of a summary judgment motion to dismiss all claims, relief is not appropriate under Rule 60(a). Thus a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.

11 Wright, Miller & Kane, Federal Practice & Procedure § 2854, at 240-41.

The Ninth Circuit has held that in ruling on a Rule 60(a) motion, the focus is on what the Court originally intended to do. Blanton v. Anzalone, 813 F.2d 1574, 1577 (9th Cir. 1987). Correctable errors under the Rule include errors where what was written or recorded was not what the Court intended to write or record. In re Jee, 799 F.2d 532, 535 (9th Cir. 1986).

The Fifth Circuit adds insight into the Rule, commenting that a correctible mistake "must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature ···" In re West Texas Marketing Corp., 12 F.3d 497, 503 (5th Cir. 1994), quoting Dura-Wood Treating Co., Division of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc., 694 F.2d 112, 114 (5th Cir. 1982). The Rule cannot be used to "salvage the government's blunders" or to apply a different "factual analyses

to a case." <u>West Texas Marketing Corp.</u>, <u>supra</u>, 12 F.3d at 505. Moreover, new evidence may not be proffered if one contends an order or judgment may be corrected under Rule 60(a). <u>Hirsch v. United States</u>, 186 F.2d 524, 524-525 (6th Cir. 1951).

Here, the Court granted the United States precisely the relief it sought and which its evidence supported. Specifically, the government's motion stated: "[t]he United States [sic.] motion seeks to reduce assessments to judgment against Thomas Mungle and Marlene Mungle…." Motion for Summary Judgment (12/23/2002). No specific dollar amount was prayed for in the motion. The only evidence submitted in support of the government's motion was the Declaration of Keith S. Blair, to which was attached self-authenticating Certificates of Assessment, Payments and Other Matters for the years in issue. See Blair Declaration, Ex. A.

Each Certificate of Assessment consisted of a cover page labeled "Certificate of Official Record," identification of the Mungles and their social security numbers, a list of transactions, including assessments, payments and other activity, and concluded with a final page that included a line indicating "Balance" and the dollar balance due for the tax year in question. The Blair Declaration, with attached exhibits, was the ***only*** evidence offered in support of the motion.

The sum total of the evidence submitted by the United States in support of its Motion for Summary Judgment supported entry of a judgment for the tax years 1988 through 1994 in the amount of $151,410.40. The Court's Judgment was in the amount of $151,430.40, or $80 less than the total of the "Balance" amounts contained in the Certificates of Assessment for 1988-1994.[4]

The Court granted the relief requested by the United States. It entered Judgment in favor of the government and against the Mungles in the amount supported by the evidence. The Court

---

[4] As was noted in Footnote 1, this $80 discrepancy is the ***only*** clerical error for which a correction would be appropriate under Rule 60(a).

9

did not write something other than what it intended to write when it issued its decision and Judgment with respect to the government's Motion for Summary Judgment. There was no clerical error contained in the June 11, 2003, Order (Judgment) that may be corrected under the authority of Fed.R.Civ.P. 60(a).

To the extent the June 11, 2003, Judgment contains an error other than a clerical error, the proper procedure for the United States to follow would have been to file a motion to alter or amend pursuant to Fed.R.Civ.P. 59. The United States Supreme Court has considered whether various post-judgment motions fall within the ambit of Rule 59. See, e.g., White v. New Hampshire Dep't of Employment Security, 455 U.S. 445, 102 S.Ct.1162, 71 L.Ed.2d 325 (1982) (motion for attorney's fees under 42 USC § 1988 not properly brought under Rule 59); Buchanan v. Stanships, Inc., 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988) (motion for costs under Rule 54(d) does not fit within Rule 59(e)).

However, in Osterneck v. Ernst & Whinney, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), the Court ruled that a post-judgment motion for discretionary prejudgment interest was properly brought as a Rule 59(e) motion. The Court reasoned that unlike costs or attorney's fees, prejudgment interest has historically been considered part of the compensation due a plaintiff. Id. At 175, 109 S.Ct. at 991. The Court noted that it had held in White, that "a postjudgment motion will be considered a Rule 59(e) motion where it involves reconsideration of matters properly encompassed in a decision on the merits." Id. Although Osterneck involved a claim for discretionary prejudgment interest, the Court stated in a footnote that its holding would apply to cases involving mandatory prejudgment interest as well:

> We do not believe the result should be different where prejudgment interest is available as a matter of right. It could be argued that where a party is entitled to prejudgment interest as a matter of right, a reexamination of issues relevant to the underlying merits is not necessary, and therefore the motion should be deemed collateral in the sense we have used that term. However, mandatory prejudgment

>interest, no less than discretionary prejudgment interest, serves to remedy the injury giving rise to the underlying action.

Id. At 176 n.3, 109 S.Ct. at 992 n.3.

The Supreme Court's decision in Osterneck is controlling here. The United States contends that the Court's judgment of June 11, 2003, reducing the Mungles' tax liabilities for 1988 through 1994 to judgment did not reflect certain post-assessment but pre-judgment interest. The interest the United States claims is due here is akin to the mandatory prejudgment interest discussed Supreme Court in footnote 3 to its decision in Osterneck. The question of interest is not collateral to the underlying merits of the United States' Motion for Summary Judgment and, as such, a motion seeking such interest should have been brought as a Fed.R.Civ.P. 59(e) motion. The time for bringing a Rule 59(e) motion, however, is limited. Any Rule 59(e) motion should have been brought within ten days, and such a motion is now time-barred.

>**B.     The Parties Reached Agreement As to The Payoff Amount.**

Even if the Court were to find that the June 11, 2003, Judgment contains a clerical error that may be corrected pursuant to Rule 60(a), the Court in its discretion should decline to do so. In 2005, after the amount of the credits from the sale of Parcels A and B in Southeast Alaska were known, the Mungles proceeded to make application to refinance their Juneau house to obtain funds to pay off the amount remaining due to the United States. In order for the Mungles to proceed with their refinance, they needed to know the approximate amount remaining due with respect to their tax liabilities.

During the summer of 2005, the Mungles' attorney, David Grossman, had various communications with John Snyder, the Department of Justice Trial Attorney with primary responsibility for representing the United States in this matter. At the time, Mr. Grossman was aware that the sale of the condominium had generated $271,608, which amount was received by the IRS and credited to the Mungles' account on February 20, 2004. The sales of Parcel A and

11

Parcel B in Southeast Alaska had generated proceeds to the government in the amounts of $52,241.77 and $48,161.84, respectively. However, Mr. Grossman was not aware of the date those amounts had been credited and what tax years they had been credited to.

In an e-mail to John Snyder dated July 19, 2006, David Grossman forwarded an interest computation reflecting a credit for the condominium but not Parcels A and B. The e-mail stated, "[b]y my computation, before crediting the amounts received from the sale of the two Alaska parcels, the total due, as of May 20, 2005, was $346,920.43. Please look this over and let me know whether you are in agreement." Grossman Decl. ¶ . Mr. Snyder responded in an e-mail dated August 22, 2005, in which he stated that "I think that all the calculations you've provided are correct. Please call me this week to discuss the logistics of payment." Id.

Thereafter, in response to orders from the Court, the Tax Division of the United States Department of Justice filed no fewer than six status reports, advising the Court of the status of the Mungles' refinance efforts and further confirming in each status report: "The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities." See Status Report as of September 1, 2005; Status Report as of October 31, 2005; Status Report as of November 4, 2005; Status Report as of December 29, 2005; Status Report as of March 31, 2006; Status Report as of May 5, 2006. These Status Reports, and their representations to the Court and to the Mungles, confirm and evidence that the parties agreed that the Mungles' remaining tax liabilities had been agreed to. Those liabilities were in the approximate amount of $235,000 to $250,000. Ultimately, Mr. Grossman obtained a computation, which he provided to Mr. Maragani, that established that as of November 1, 2006, the total liability remaining was $235,148.00. Grossman Decl. ¶ 46 & Ex. M.

The Mungles reached agreement with the Department of Justice regarding the amount remaining due to the United States, and the Court should not countenance any effort by the United States to now repudiate that agreement. We anticipate the government to respond that John Snyder had no authority to compromise or settle any of the liabilities at issue in this case. There was, however, no compromise or settlement. The attorneys merely agreed as to the amount remaining due and owing from the Mungles to the IRS. Moreover, the authority to compromise or to otherwise bind the government rests with the Chief of the Tax Division's Civil Trial Section, Western Region, or in his absence, with the Assistant Chief under delegation orders from the Attorney General or his delegate. Grossman Decl. ¶ 49-50. However, the government must acknowledge that with very few exceptions, every correspondence or pleading leaving the Tax Division is reviewed by the Chief of an Assistant Chief. Grossman Decl. ¶ 50. Thus, when the Department of Justice filed its six separate Status Reports, spanning a time frame from September 1, 2005 to May 5, 2006, a period of eight months, the official position of the Tax Division of the Department of Justice *had* reached agreement with the Mungles regarding the amount remaining due with respect to their tax liabilities. That agreement contemplated a liability of approximately $235,000 to $250,000. Grossman Decl. ¶¶ 20, 23 & Ex. C. The Department of Justice should not be permitted now to repudiate that agreement.

      **C.**    **The Government Is Estopped to Contend a Greater Amount is Due and Owing By the Mungles**

The doctrine of equitable estoppel adjusts the relative rights of parties based upon considerations of justice and good conscience. United States v. Georgia Pacific Co., 421 F.2d 92, 95-96 (9th Cir. 1970). The doctrine prevents a party, in law and at equity, from pursuing a position or asserting rights which "might have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position

13

for the worse." Id.  The doctrine may be applied against the United States under proper circumstances.  United States v. Wharton, 514 F.2d 406, 410 (9th Cir. 1975).

The traditional elements of estoppel are (a) the party to be estopped knows the facts, (b) he intends that his conduct will be acted on; (c) the party to be estopped must be ignorant of the true facts; and (d) he detrimentally relied on the former actor's conduct.  Watkins v. United States Army, 875 F.2d 699, 709 (9th Cir.1989) (en banc), cert. denied, 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990).  When estoppel is sought against the government, the doctrine also requires a showing that the agency engaged in affirmative conduct that goes beyond mere negligence and that the public's interest will not suffer undue damage as a result of application of the doctrine.  Id. at 707.

Here, the government, through its agents in the Department of Justice, made repeated statements over the course of eight months that an agreement had been reached with the Mungles regarding the amount of their remaining tax liability.  With respect to the traditional elements of estoppel, the government clearly was aware of the true facts, since it ultimately has taken the position that the Mungles' tax liability is of an order of magnitude greater than that stated and represented in 2005 and the first half of 2006.  The government just as clearly intended that its statements would be relied on by the Mungles in proceeding with their refinance to obtain funds with which to pay the remaining liability.  Mr. Mungle was wholly unaware of the true state of facts until the government's current attorney stated that the government contended that the Court's Judgment of June 11, 2003, did not reflect all of the interest which the government claimed was due it.  Mr. Mungle relied on the various statements to his detriment, by continuing to pursue a refinance, when he could possibly have focused his efforts on other finance options available to him.  See Mungle Decl. ¶ 14-15.

The additional required elements for estoppel against the government are also present. The Department of Justice, acting through its trial attorney, as well as through its Section Chief and/or Assistant Section Chief, engaged in affirmative misleading conduct, filing no fewer than six Status Reports with this Court representing to the Court and to the Mungles that an agreement had been reached as to the amount remaining due from the Mungles. Such continued and repeated conduct goes beyond possible mere negligence on the part of the government and its representatives.

Finally, the government will not suffer any undue damage if the Court applies the doctrine of equitable estoppel in this case. Upon payment by the Mungles of the remaining approximately $235,000 due and owing to the United States, the government will have recovered from the Mungles 100% of the taxes assessed against them for 1982 and 1985-1994, it will have recovered 100% of the penalties and interest assessed against them with respect to those same tax years, and it will have recovered a substantial portion of the interest accrued on those liabilities. Clearly, under these circumstances the government cannot clam that it will suffer any undue harm or damage as a result of application of the doctrine of estoppel in this case.

**D.     Entry of Judgment.**

For the reasons discussed above, there is no need for entry of judgment against the Mungles. The Court's Order of June 11, 2003, is a Judgment that reduces to judgment the tax liabilities for the 1988 through 1994 tax years. The Order of March 24, 2004, entered pursuant to the parties' Stipulation, also serves as a judgment reducing to judgment the Mungles' tax liabilities for the tax years 1982 and 1985-1987. No further judgment document is necessary. A further reason for denial of the government's motion is found in the Mungles' repeated stated intentions to refinance their home to pay all remaining amounts due to the government. It was contemplated in 2005, and this year as well, that the Mungles would proceed with their refinance

and would pay off the approximately $235,000 remaining due to the government. That is the final step needed in this case, and once it takes place, the case can be dismissed with prejudice.

### IV. CONCLUSION

For the reasons set forth herein and in the Declarations of Thomas R. Mungle and David S. Grossman, the United States Motion to Correct Order and for Entry of Judgment should be denied.

DATED this 14th day of December, 2006.

/s/ David S. Grossman
DAVID S. GROSSMAN, WSBA #18428
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St.
Walla Walla, WA  99362
Telephone:  (509) 525-8130

/s/   William L. Choquette
WILLIAM L. CHOQUETTE
ABA No. 7410066
Choquette & Farleigh, LLC
629 L Street, Suite 101
Anchorage, AK  99501
Telephone (907) 274-4626

Attorneys for the Mungle Defendants