David S. Grossman
WSBA No. 18428
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse Street
Walla Walla, WA  99362
Telephone:  (509) 525-8130
Telefax:  (509) 525-8726

William L. Choquette
ABA No. 7410066
Choquette & Farleigh, LLC
629 L Street, Suite 101
Anchorage, Alaska  99501
Telephone:  (907) 274-4626
Telefax:  (907) 274-9819

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. A02-0054 CV (JKS) |
| | ) | |
| Plaintiff, | ) | DECLARATION OF DAVID S. |
| | ) | GROSSMAN IN OPPOSITION TO UNTIED |
| | ) | STATES' MOTION TO CORRECT ORDER |
| | ) | AND FOR ENTRY OF JUDGMENT |
| vs. | ) | |
| | ) | |
| THOMAS R. MUNGLE and MARLENE C. | ) | |
| MUNGLE; DOWN RIGGER CORP.; | ) | |
| SIERRA VIEW HOLDING, INC.; ROBERT | ) | |
| and JOAN DIDIER; INVERSIONES | ) | |
| QUIZARRRA, S.A.; DAVID ALLISON; | ) | |
| AND HOWARD JAEGER, | ) | |
| | ) | |
| Defendants. | ) | |

I, DAVID S. GROSSMAN, declare as follows under penalty of perjury under the laws of

the United States of America:

1

1.    I am of legal age and am competent to testify to the matters set forth in this Declaration.  The statements in this Declaration are based on my own personal knowledge and are made in support of the opposition of Thomas R. Mungle and Marlene C. Mungle (hereinafter the "Mungle Defendants") in opposition to the United States' Motion to Correct a Clerical Error in the Court's Order of June 11, 2003 and Motion for Entry of Judgment Against Thomas R. Mungle and Marlene C. Mungle.

2.    This case involves the United States' complaint to reduce to judgment certain assessments for income tax, penalties and interest made against the Mungle Defendants for the years 1982 and 1985 through 1994.  The complaint further sought to set aside transfers of certain real property and to foreclose the federal tax liens attaching to those properties.  A related suit was filed in the District of Hawaii seeking to foreclose federal tax liens attaching to a condominium on the Island of Maui.

3.    On December 30, 2002, the United States filed its Motion for Summary Judgment. In that motion, the government sought, among other relief, summary judgment as to all tax years at issue in this case.  The government's motion stated that it sought "to reduce assessments to judgment against Thomas Mungle and Marlene Mungle…."

4.    The government's Motion for Summary Judgment was supported by the Declaration of Keith S. Blair.  Mr. Blair was the Department of Justice Tax Division Trial Attorney with primary responsibility for representing the United States in this case.  Attached to Mr. Blair's Declaration were various exhibits, marked Exhibits A through H.  The government submitted no other evidence to the Court in connection with its Motion for Summary Judgment.

5.    The Blair Declaration stated only as follows with respect to the government's request to reduce assessments to judgment:  "2.  True and correct copies of Certificates of Assessments,

Payments and Other Specified Matters for Thomas Mungle and Marlene Mungle for the years 1982, and 1985 through 1994 are attached hereto as Exhibit A."

6.    Exhibit A consisted of self-authenticating Certificates of Assessment, which identified the Mungles, their social security numbers, and assessment, payment and other activity with respect to their tax accounts for the various tax years at issue in the case.  The Certificate of Assessment for each tax year concluded with a page that reflected "Balance  $_____," with the dollar amount owing set forth.

7.    The "Balance" amounts for the Mungles' tax accounts for the 1988 through 1994 tax years, per the Certificates of Assessment contained in Exhibit A to the Blair Declaration, total $151,410.40.

8.    On June 11, 2003, this Court entered its decision on the government's Motion for Summary Judgment.  The Court's decision, titled "Order," granted in part and denied in part the United States' Motion for Summary Judgment.  With respect to the tax liabilities at issue, the Order on Summary Judgment held that genuine issues of material fact precluded judgment for the tax years 1982, 1985, 1986 and 1987.  With respect to the tax years 1988 through 1994, the Court provided that "[t]he amount due and owing for the years 1988-1994 is $151,330.40 as of January 15, 2002, plus interest and statutory additions accrued thereafter less any applicable credits.  *See id.*  The Government is entitled to summary judgment reducing these assessments to judgment against the Mungles."  The Order concluded by providing:

> [T]he assessments against the Mungles for 1988-1994 ***are reduced to judgment in the amount of $151,330.40 as of January 15, 2002***, plus interest and statutory additions accrued thereafter less any applicable credits.

(emphasis added).  A copy of the Court's Order on Summary Judgment is attached hereto marked as Exhibit "A."

9.    The government did not object to the Court's Order on summary judgment, nor did it file a motion to alter or amend its judgment regarding the Mungles' 1988 through 1994 tax liabilities.

10.    The Department of Justice Trial Attorney who filed the complaint in this matter and who was responsible for its litigation through the first half of 2005 was Keith S. Blair. Following issuance of the Court's Order on Summary Judgment, Mr. Blair and I agreed to attempt to stipulate to the amount remaining due from the Mungles to the United States for the years 1982 and 1985-1987.  In that regard, we arranged for an IRS Revenue Agent to meet with Cliff James, the Mungle Defendants' CPA, to review the assessments and to attempt to arrive at an agreement as to the amount of the tax liability due and owing for the remaining years.

11.    Mr. James did meet with the IRS Revenue Agent and, as a result of that meeting, the parties were able to agree on the amount of the Mungle Defendants' liability for the 1982, 1985, 1986 and 1987 tax years.  On March 22, 2006, the parties' Stipulation to Reduce Assessments to Judgment was filed with the Court.  That Stipulation, which was entered as an Order of the Court on March 24, 2004, provided:

> The federal tax assessments against Thomas Mungle and Marlene Mungle for the years 1982 and 1985-1987 may be reduced to judgment in the amount of $427,158.15 as of January 5, 2004, plus interest and statutory additions accrued thereafter.

A copy of the Stipulation and Order is attached hereto marked as Exhibit "B."

12.    As a result of the determination made in the Court's Order on Summary Judgment and the parties' Stipulation to Reduce Assessments to Judgment, the total amount of the Mungle Defendants' liability was determined to be $578,488.55, with interest computed on $151,488.55

of that amount from and after January 15, 2002, and with interest computed on the remaining $478,158.15 from and after January 5, 2004.

13. I had discussions with Mr. Blair in which I informed him that the Mungles believed that once the Maui condominium and the two Juneau parcels were sold and the proceeds applied to their tax liabilities as determined by the Court, they would likely be in a position to refinance their Juneau residence to satisfy the remaining balance due and owing to the United States. Based on these discussions, Mr. Blair agreed to defer seeking foreclosure of the tax liens attaching to the Mungles' home, and to first seek the sale of the condominium and Parcels A and B.

14. The Hawaii condominium sold in the early months of 2004, at approximately the same time the parties were agreeing on the amount of the Mungles' liabilities for 1982, and 1985-1987. I obtained an official IRS transcript of account from the IRS for the Mungles' account for the taxable year 1982, and this transcript of account reflects a credit of $271,608.48 on February 20, 2004. This credit represents the net proceeds of sale received by the IRS from the sale of the Hawaii condominium.

15. On October 14, 2004, the Internal Revenue Service sold Parcel A to LNJK Partnership for $105,000. The Mungle Defendants owned a 50% interest in Parcel A, with the other 50% interest owned by Defendants Robert and Joan Didier.

16. On October 14, 2004, the Internal Revenue Service sold Parcel B to Tigar Properties, Inc. for $145,000. The Mungle Defendants owned a 1/3 interest in Parcel B together with Defendants David Allison and Howard Jaegar.

17. On or about January 3, 2005, the United States filed its Motion to Confirm Sale, seeking confirmation of the sale of Parcels A and B. On January 14, 2005, the Court filed its

Order Confirming Sale, confirming the sale of Parcels A and B and directing application of the proceeds.  The Court's Order provided that with respect to Parcel A, the United States was to receive "$52,241.77 to be applied against the unpaid tax liabilities of Thomas R. Mungle and Marlene C. Mungle for the taxable periods ending December 31, 1982, and December 31, 1985 through December 31, 1994."  With respect to Parcel B, the Court's Order Confirming Sale provided that the United States was to receive $48,161.84 to be applied against the unpaid tax liabilities of Thomas R. Mungle and Marlene C. Mungle for the taxable periods ending December 31, 1982, and December 31, 1985 through December 31, 1994."

18.  Thus, based on the Court's prior determination that the Mungles' tax liabilities totaled $578, 488.55, together with interest accrued on portions of that total from January 15, 2002 and January 5, 2004  (Exhibits A and B hereto), and credits from the sale of the condominium and Parcels A and B totaling $372,012.09,  I computed the Mungle Defendants' remaining tax liabilities to be $206,476.46, exclusive of interest that would have accrued from January 15, 2002 and January 5, 2004.

19.  By June, 2005, Keith Blair had left his position with the Department of Justice.  He was replaced by John Snyder, also a trial attorney, with the Tax Division's Civil Trial Section, Western Region.

20.  On June 10, 2005, I spoke on the telephone with Mr. Snyder.  I told him about my conclusions regarding the amount remaining due from the Mungles.  I also told him that the Mungles were committed to pursuing a refinance of their house but that they needed a payoff figure before they could proceed further.  Mr. Snyder informed me that he was waiting for the Internal Revenue Service to provide him with an updated payoff figure based on the Court's determinations as to tax due and reflecting credits that had been applied to the Mungles' account.

21. In July, 2005, I obtained an interest computation using tax interest software similar to that used by the IRS. The software contains the IRS interest rates for various periods, and produces results similar, if not identical, to the interest computations prepared by the IRS. On July 19, 2005, I sent an e-mail to John Snyder that included an interest computation for the Mungles' tax liabilities. My e-mail stated in part, "[b]y my computation, before crediting the amounts received from sale of the two Alaska parcels, the total due, as of May 20, 2005, was $346,920.43. Please look this over and let me know whether you are in agreement." A copy of my e-mail to Mr. Snyder is part of an e-mail thread that contains Mr. Snyder's August 22, 2005, response to me. That e-mail thread is attached hereto marked as Exhibit "C."

22. I spoke with Mr. Snyder on August 3, 2005, and he informed me that he was working on obtaining the interest computations. I told him that the Mungles needed at least an accurate ballpark figure of the amount remaining due so they could proceed with their refinance.

23. Mr. Snyder replied to my July 19, 2005, e-mail in an e-mail dated August 22, 2005. In that response he stated: "David, [t]he remaining sale amounts were $52,241.77 applied from the sale of Parcel A and $48,161.84 applied from Parcel B. I think that all the calculations you've provided are correct. Please call me this week to discuss the logistics of payment. My apologies for all of this having taken so long." A copy of my July 19, 2005 e-mail to Mr. Snyder and his August 22, 2005 reply to me is attached hereto marked Exhibit "C."

24. On or about September 7, 2005, the Department of Justice filed the government's Status Report as of September 1, 2005. That status report represented to the Court and to the Mungles that "[t]he Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities." The Status Report further advised the Court that the Mungles were pursuing a

refinance of their property and that once all payments had been made, the United States and the taxpayers would file a stipulation for dismissal of this action.  A copy of the Status Report as of September 1, 2005, is attached hereto marked as Exhibit "D."

25.   The Department of Justice filed five additional Status Reports, all containing the representation that "[t]he Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities."  Those Status reports are as of October 31, 2005, November 29, 2005, December 29, 2005, March 31, 2006 and May 5, 2006.  Copies of these Status Reports are attached hereto marked as Exhibits "E," "F," "G," "H," and "I," respectively.

26.   In the fall of 2005, Thomas Mungle informed me that as a result of review of his loan application and appraisal, it would be necessary to make certain repairs to the property.  The need to make these repairs delayed the processing of the Mungles' loan for some months.  The Mungles encountered the need for further repairs required by their lender.  I informed Mr. Snyder of this fact and the fact that the closing of the refinance would be delayed.

27.   I continued to confer with my clients and to keep Mr. Snyder advised of the status of my clients' efforts to refinance their property.  As a result of the delays caused by the need to make repairs, Tom Mungle informed me that his lender required a new, updated appraisal.  I informed Mr. Snyder of this fact.  In the Status Report as of May 5, 2006, Mr. Snyder advised the Court of the need for a new appraisal and the Mungles' expectation that the loan would close within 30 days.  As with the previous five Status Reports, this Status Report reiterated the statement that the parties "have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities."  See Exhibit "I."

28.  On June 1, 2006, Mr. Snyder informed me that June 16, 2006, would be his last day with the Department of Justice.  He told me that the case would be reassigned and I would have to work out final details of payment of the tax liabilities with his successor.

29.  Prior to Mr. Snyder's departure from the Department of Justice, I continued to keep him advised of the Mungles' efforts to refinance their home.  On June 13, 2006, I informed him in a telephone call that the Mungles' loan officer had ordered an updated title report.  On Monday, June 19, 2006, I spoke on the telephone with Mr. Snyder, who was still at his office, and he advised me that his last official day with the Department of Justice had been Friday, June 16, 2006.  I told him I would send the Mungles' preliminary title commitment to his Section Chief, Robert Watkins.

30.  On June 19, 2006, I wrote to Mr. Snyder's Section Chief, Robert Watkins, to advise of the status of the case.  My letter stated, "Mr. Snyder and I previously reached agreement on the outstanding balance due, but we will require an update of that amount since interest has continued to accrue."  Enclosed with my letter was a Preliminary Commitment for Title Insurance issued by Pacific Northwest Title Insurance Company.  My letter concluded that "it would be helpful to have an up-to-date payoff of the Court's judgment.  I will work with the title insurance company to determine what is needed to clarify that title to the property is vested in the Mungles, and not Down Rigger Corp.  Finally, I expect that the title insurance company will require that all of the tax liens listed in the preliminary commitment be released."  My letter concluded, "[p]lease let me know whether this file has been reassigned.  If it has not been reassigned, please consider doing so as soon as possible."  A copy of my letter, without the title commitment, is attached hereto marked as Exhibit "J."

31.  On July 31, 2006, I was telephoned by Department of Justice Trial Attorney Goud Maragani.  Mr. Maragani informed me he had taken over responsibility for the case from Mr. Snyder.  He also informed me that he had determined that the payoff figure was approximately $800,000.  I told him this could not possibly be the case, since John Snyder and I had reached agreement previously as to the amount that was due.  Mr. Maragani indicated he would review the correspondence in the file and get back to me.

32.  On August 14, 2006, I spoke on the telephone with Mr. Maragani and informed him that the Mungles' lender was requiring an "as built" survey, which Mr. Mungle was working on obtaining.  We discussed the need to have an up-to-date payoff figure, and Mr. Maragani stated that he was working on it.

33.  On September 6, 2006, I spoke on the telephone again with Mr. Maragani.  He informed me that he had obtained an updated payoff figure from the IRS and that as of August 31, 2006, the total amount due from the Mungles to the IRS was $159,513.63.  I asked for confirmation of this in writing and he agreed to so.  I repeated this request in a letter to Mr. Maragani dated September 7, 2006.  I never did receive written confirmation of the payoff of $159,513.63 from Mr. Maragani.  A copy of my September 7, 2006, letter to Mr. Maragani is attached as Exhibit "K."

34.  On September 15, 2006, I spoke again with Mr. Maragani.  In this conversation he informed me that the previous payoff figure he had given me was inaccurate and that the correct payoff total had grown to approximately $578,000.  I told him this could not possibly be the case in view of the fact that the total tax liability had been determined by the Court to be $578,488.55, with interest on $151,330.40 of that total accruing from January 15, 2002, and

interest accruing on the remaining $427,158.15 from January 5, 2004, and that credits of nearly $375,000 had been applied to the balance.

35.    On September 15, 2006, Mr. Maragani filed the government's Motion for Order of Foreclosure, seeking to foreclose the tax liens and force a sale of the Mungles' home.

36.    On September 19, 2006, I spoke on the telephone with Mr. Maragani, and he stated he was working with an IRS Revenue Agent who was looking into the interest computation issue.

37.    On September 26, 2006, I wrote a short letter to Mr. Maragani stating, "Have you heard anything further from the IRS regarding the claimed pay-off figure?  Mr. and Mrs. Mungle can do nothing further with respect to the refinance until we agree on the amount due and owing."

38.    On September 29, 2006, Mr. Maragani and I spoke on the telephone.  I expressed my frustration with the apparent inability of the IRS to come up with a simple interest computation, since the amount of the Mungles' liabilities were fixed by the Court's Order on Summary Judgment and the parties Stipulation to Reduce Assessments to Judgment.  I noted that the credits were known, and that interest would need to be computed on the amounts determined by the Order on Summary Judgment from January 15, 2002, and on the Stipulation to Reduce Assessments to Judgment from January 5, 2004, taking into account the credits from the sale of the Maui condominium and Parcels A and B.

39.    On September 29, 2006, I wrote Mr. Maragani outlining the difficulties we had been having coming up with a payoff figure.  A copy of my letter is attached hereto marked as Exhibit "L."

40. Also on September 29, 2006, I had prepared an interest computation using the Tax Interest software, Version 2006.4. This is a tax, interest and penalty program that makes use of the IRS interest tables and prepares interest computations consistent with those prepared by the IRS. The computation ran interest on the $151,330 amount due with respect to the 1998-1994 tax years from January 15, 2002 (consistent with the Court's Order on Summary Judgment), carried forward to November 1, 2006. The total due, with interest to that date was $198,621.78. The computation ran interest on the $427,158.15 determined by the Stipulation to Reduce Assessments to Judgment (for tax years 1982 and 1985-1987) from January 5, 2004 (consistent with the Stipulation). Credits of $271,608.48, $48,161.84 and $52,241.77 were applied as of February 20, 2004, October 14, 2004 and October 14, 2004, respectively. The total due, after taking credits into account, was computed to be $36,527.58. The total due per my interest calculation using the Tax Interest software was $235,149.36 as of November 1, 2006. A copy of the interest computation is attached hereto marked Exhibit "M."

41. On October 17, 2006, I spoke on the telephone with Mr. Maragani, at which time he informed me that the Revenue Agent had this time computed the payoff figure to be $581,841.69. I again expressed my disagreement with this number. Also on October 17, 2006, I wrote to Mr. Maragani expressing my views regarding the amount remaining due from the Mungles. A copy of my letter is attached as Exhibit "N"

42. On October 20, 2006, I spoke on the telephone with Mr. Maragani, and during this conversation, he informed me the payoff number had increased by approximately $100,000 to $686,435.86. I again expressed my frustration with the apparent inability of the IRS to prepare a simple interest computation and again stated that by my computation, the total due was less than $250,000. Mr. Maragani conceded that he was mystified and frustrated as well by the differing

12

numbers the IRS kept arriving at and the difficulty the IRS appeared to be having coming up with the interest computation.

43.  On Wednesday, October 25, 2006, Mr. Maragani and I spoke again on the telephone. During this conversation, he advised he hoped to have a revised computation by Friday, October 27, 2006.  He further told me that there had apparently been problems properly crediting payments on the Mungles' account due to the fact that the payments were processed by the IRS rather than by using a Department of Justice lockbox.

44.  Throughout the course of my various conversations with Mr. Maragani, I asked him a number of times to please provide me with the actual computations the IRS had prepared, so that I could compare those computations with computations I obtained using the Tax Interest software.  Mr. Maragani told me that the agent's computations were confusing, and I would not be able to figure out what the Revenue Agent had done.  He never did provide me with any computations that the Revenue Agent had prepared.

45.  On October 31, 2006, Mr. Maragani and I spoke on the telephone.  During this conversation, he informed me that the IRS had concluded that the reason for the differing computations was that the Court's Order on Summary Judgment, entered nearly 3 ½ years previously, on June 10, 2006, was incorrect, and did not include the proper amount of interest. He stated that the United States intended to file a motion asking the Court to "correct" that Order.

46.  Based on this Court's prior Judgment dated June 11, 2003, and the parties' Stipulation (which was also memorialized as a Judgment, and based on undisputed credits to the Mungles' account, the correct amount of the Mungles' tax liability is less than $250,000.  The interest computation prepared using Tax Interest software indicates that the amount due, with

interest computed to November 1, 2006, is $235,149.36.  A copy of that interest computation is attached hereto marked as Exhibit "M."

47.  The Mungles have at all times been willing, and are able, to refinance their home to pay the remaining balance due and owing to the United States, assuming the amount correctly reflected the Court's judgments regarding the amount due and reflecting the credits from the sale of the three properties.  They had previously reached agreement with the government as to the amount remaining due and owing, and the Department of Justice represented repeatedly to the Court that agreement had been reached.  Finalization of payment was dependent on the Mungles' refinancing their home, which was delayed initially by the need to make repairs, then by the need for a new appraisal and finally an "as built" survey.  Since approximately June, however, the delays have been caused by the government's inability to compute an up-to-date payoff figure and then its contention, 3 ½ years after the fact, that the Court's Order on Summary Judgment was in error.

48.  The Mungles contend that an agreement was reached with the Department of Justice, Tax Division, that the amount of their remaining tax liability was less than $250,000, and all that was required was a final computation once a closing date for their refinance was known.  I have computed the amount due to be $235,149.36 as of November 1, 2006.

49.  I anticipate that the government will attempt to contend that Mr. Snyder and others at the Department of Justice did not have authority to agree to the amount of the Mungle's tax liability.  I have personal experience with the procedures at the United States Department of Justice, Tax Division, with respect to agreements to bind the government.  I was a trial attorney in the Tax Division's Civil Trial Section, Northern Region, between 1984 and 1989, and have

subsequently represented clients since 1990 in civil tax litigation in which the government was represented by a trial attorney with the Tax Division's Civil Trial Section, Western Region

50. In general, the Attorney General has authority to enter into agreements to bind the government, and the Attorney General has delegated that authority to various individuals. In the case of most civil tax cases, authority has been delegated to the Assistant Attorney General for the Tax Division, and has been further delegated to the Section Chief and his delegate, typically the Assistant Section Chief. Based on my experience, no correspondence is sent or pleadings filed by the Tax Division unless and until the correspondence or pleadings have been reviewed and approved by the Section Chief or Assistant Chief. I would expect that each of the Status Reports filed by the Department of Justice in this case representing an agreement had been reached as to the amount of the Mungles' remaining tax liability was reviewed and approved by the Section Chief or by the Assistant Section Chief.

EXECUTED under penalty of perjury under the laws of the United States of America this 13th day of December, 2006, at Walla Walla, Washington.

DAVID S. GROSSMAN
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St.
Walla Walla, WA 99362
Telephone: (509) 525-8130


Attorney for Mungle Defendants

**FILED**

JUN 1 1 2003

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____ Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. A02-0054 CV (JKS) |
| Plaintiff, | |
| vs. | ORDER |
| THOMAS R. MUNGLE and MARLENE C. MUNGLE; DOWN RIGGER CORPORATION; SIERRA VIEW HOLDING, INCORPORATED; ROBERT and JOAN DIDIER; INVERSIONES QUIZARRA, S.A.; DAVID ALLISON; and HOWARD JAEGER, | RECEIVED |
| | JUN 1 2 2003 |
| Defendants. | CHOQUETTE & FARLEIGH, LLC |

## INTRODUCTION

Presently before the Court is the Government's motion for summary judgment. *See* Docket No. 44. This motion is opposed, in part. *See* Docket Nos. 49 (Response); 52 (Opp'n); 57 (Reply); 60 (Reply).

## FACTUAL AND PROCEDURAL BACKGROUND

On March 14, 2002, the Government filed a complaint against Defendants Thomas R. Mungle and Marlene C. Mungle and others.[1] *See* Docket No. 1. On April 18, 2002, the Government filed its first amended complaint. *See* Docket No. 3.

---

[1] The other Defendants are Down Rigger Corporation; Sierra View Holding, Inc.; Robert and Joan Didier; David Allison; Howard Jaeger; and Inversiones Quizarra, S.A. A default has been entered against Down Rigger Corporation; Sierra View Holding, Inc.; and Inversiones Quizarra, S.A. *See* Docket No. 31.

1

**EXHIBIT**

tabbies®

A

64

Count I of the first amended complaint seeks to reduce the tax assessments made against the Mungles to judgment. *See id.* at 5–6. The tax assessments in this case stem from the unpaid federal income tax liabilities of the Mungles for the years 1982 and 1985–1994. The Government contends that there is due and owing from the Mungles $961,084.67 as of January 15, 2002, plus interest and statutory additions accrued thereafter less any applicable credits. The Mungles admit that they did not timely file tax returns for 1982 and 1985–1990. *See* Docket No. 52 at 3. As a result, the Internal Revenue Service ("IRS") prepared substitute for return ("SFR") assessments for those years.

The Mungles eventually retained Cliff James, a certified public accountant, to assist them with their tax returns. *See id.* at 3–4. James prepared and filed returns for the years 1988–1994. *See id.* at 4. These returns were received and accepted by the IRS. *See id.* James avers that he also submitted returns for 1982, 1985, 1986, and 1987. *See id.*, Decl. C. James at 6, ¶ 21. The Government contends that it never received these returns. *See* Docket No. 60.

Counts II–VIII of the first amended complaint seek to foreclose the federal tax liens encumbering the subject property in this matter. *See* Docket No. 3 at 7–15. The Mungles have transferred their interests in the subject property but the Government seeks to set aside the transfers because they were fraudulent. In the alternative, the Government seeks to foreclose the tax liens encumbering the subject property because the transferees hold title to the property as nominees of the Mungles.

There are three parcels of real property involved in this litigation. Parcel 1 is the Mungles' residence, which is located at 3090 Douglas Highway, Juneau, Alaska. The legal description for Parcel 1 is:

> A tract of land in U.S. Mineral Survey No. 173, Juneau Recording District, First Judicial District, State of Alaska described as follows:
>
> Begins S 38° 33' E, 2417.50 feet from U.S.L.M. No. 5, run thence N 51° 40' E, 102.20 feet to the Meander Line of said Mineral Survey; Thence S 43° 00' E on said Meander Line, 36.00 feet to the true point of beginning; thence S 43° 00' E continuing on said Meander Line 109.40 feet; thence S 50° 20' W, 110.54 feet to the Northeast Line of Juneau-Douglas Highway; thence N 46° 09' W, on said Highway Line, 110.57 feet to a point 36.00 feet S 46° 09' E from a point S 38°

ORDER

33' E, 2417.50 feet from U.S.L.M. No. 5, thence Northeasterly to the
true point of beginning.

*See* Docket No. 44, Ex. B at 1. On May 15, 1989, the Mungles purported to transfer Parcel 1 to

Down Rigger Corporation for the stated consideration of one dollar and other valuable

consideration. The Mungles concede that this transfer was fraudulent and that they are the equitable

and legal owners of Parcel 1. *See* Docket No. 52 at 4.

Parcel 2 is real property that the Mungles and Robert and Joan Didier bought in 1981. The

legal description of Parcel 2 is

Lot 61, U.S. Survey 3268, Juneau Recording District, First Judicial
District, State of Alaska,

EXCEPT THEREFROM the Northwest 165.00 feet of the Southwest
330.00 feet[.]

*See* Docket No. 44, Ex. D at 1. On November 6, 1989, the Mungles purported to transfer their

interest in Parcel 2 to Inversiones Quizarra, S.A. The Mungles concede that this transfer was

fraudulent and that they are the equitable and legal owners of an interest in the Parcel 2. *See* Docket

No. 52 at 4.

Parcel 3 is real property that Mr. Mungle, David Allison, and Howard Jaeger purchased in

1981. The legal description of Parcel 3 is

A fraction of Tract 1, subdivision of a fraction of U.S. Survey 2135,
according to Plat 273, Juneau Recording District, First Judicial
District, State of Alaska, more particularly described as follows:

BEGINNING at corner No. 5 of U.S. Survey 2135; thence East along
line 5-6 of said survey 730.17 feet to the R.O.W. line of the North
Douglas Highway; thence along said R.O.W. line, South 23° 30' East,
160.00 feet; thence South 66° 30' West, 64.12 feet; thence South 87°
00' West, 198.16 feet; thence South 24° 13' East, 239.52 feet; thence
South 60° West, 733.84 feet to a point on line 4-5 of said U.S. Survey
2135; thence North, along said line 4-5, 768.04 feet to the point of
beginning.

*See* Docket No. 44, Ex. G at 1. On November 6, 1989, Mr. Mungle purported to transfer his interest

in Parcel 3 to Inversiones Quizarra, S.A. The Mungles concede that this transfer was fraudulent and

that Mr. Mungle is the equitable and legal owner of a one-third undivided interest in Parcel 3. *See*

Docket No. 52 at 4.

ORDER

3

The Government now moves for summary judgment seeking to reduce the tax assessments to judgment against the Mungles, to set aside the fraudulent transfers of the subject real property, and to foreclose the federal tax liens on the subject real property. *See* Docket No. 44.

## DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In deciding a motion for summary judgment, the Court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. *See id.* at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

### B.   Tax Assessments

In an action brought to collect federal taxes, the Government bears the initial burden of proof. *See Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997). That burden can be satisfied through introduction of proof of tax assessments, which are entitled to a presumption of correctness so long as they are supported by a minimal factual foundation. *See id.* Certificates of Assessments and Payments (Form 4340) are "highly probative, and are sufficient, in the absence of contrary evidence, to establish that the notices and assessments were properly made." *See United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984).

The Government offers Certificates of Assessments and Payments for the years at issue. *See* Docket No. 44, Ex. A. These Certificates of Assessments and Payments establish that the tax liabilities were assessed against the Mungles, that notices and demand for payment were properly

ORDER

P:\HOME\JUDGES\DOCS\SHARED\CIV\A02-0054,004.wpd                    4

sent, and that the Mungles are presumptively liable for the unpaid taxes, penalties, and interest shown on the Certificates. The Mungles do not dispute the Government's tax assessments for the years 1988–1994. The amount due and owing for the years 1988–1994 is $151,330.40 as of January 15, 2002, plus interest and statutory additions accrued thereafter less any applicable credits. *See id.* The Government is entitled to summary judgment reducing these assessments to judgment against the Mungles.

Although the Mungles do not dispute that they may have a federal income tax liability for the years 1982, 1985, 1986, and 1987, the Mungles do dispute the amount of the assessments for these years. The Government assessed the Mungles' tax liability for 1982, 1985, 1986, and 1987, respectively, as $103,874.00; $13,887.00; $14,022.00; and $222,431.00. *See* Docket No. 44, Ex. A. The $222,431.00 assessed for 1987 has since been abated to $31,705.00. *See id.*, Ex. A (Form 4340 for 1987 tax period). As noted above, the IRS assessed the Mungles' tax liability for the contested years by preparing SFR assessments. In preparing an SFR assessment, the IRS assesses the tax liability based on the information that it has, which is generally limited to income received by the taxpayer. SFR assessments generally do not take into account any deductions or credits the taxpayer may be entitled to claim because the IRS, understandably, does not have this information as the taxpayer did not file a return.

Cliff James, the accountant retained by the Mungles, avers that he has now completed tax returns for the Mungles for the contested years. According to his declaration, James has computed the Mungles' tax liability for 1982 to be $34,035.00, as compared to the $103,874.00 assessed by the Government. *See* Docket No. 52, Decl. C. James at 5, ¶ 17. An unsigned copy of the 1982 return that James prepared is attached to his declaration. James has determined that the Mungles had no tax liability for the years 1985 and 1986, *see id.*, Decl. C. James at 5–6, ¶¶ 18–19, and that their tax liability for 1987 was $11,640.00 (compared to the $222,431.00 assessed but then abated to $31,705.00). *See id.*, Decl. C. James at 6, ¶ 20.

The Government argues that the James declaration is insufficient evidence to create a genuine issue of material fact as to the correctness of the tax assessments for the contested years. The Government accuses the Mungles of doing nothing more than presenting conclusory allegations

ORDER

5

that they were entitled to deductions in the contested years. The Government points out that the 1982 tax return attached to the James declaration is not signed and that on the Form Schedule A for the 1982 return, there are notations that state "no evidence" next to certain deductions, thereby, according to the Government, raising a question of whether the Mungles are entitled to these deductions. *See* Docket No. 60 at 3–4. The Government also faults the Mungles for not submitting any documentation that would substantiate their entitlement to the claimed deductions. *See id.* at 4. In short, the Government argues that the Mungles have failed to come forward with specific facts showing that they were entitled to any deductions for the contested years.

The James declaration appears to be sufficient evidence to create a genuine issue of material fact as to the correctness of the tax assessments for 1982, 1985, 1986, and 1987. The James declaration contains more than conclusory allegations that the Mungles were entitled to deductions in the contested years. James details what deductions the Mungles claim entitlement to and why. Accordingly, the Government does not appear entitled to summary judgment on the tax assessments for 1982, 1985, 1986, and 1987.

**C.    Fraudulent Transfers**

The Government seeks to set aside the transfers of the Mungles' interest in the three parcels of real property involved in this litigation. Because the Mungles have conceded that these transfers were fraudulent, the Government is entitled to summary judgment setting aside the transfers of the Mungles' interests in Parcels 1, 2, and 3.

**D.    Foreclosure of Tax Liens**

It is undisputed that, pursuant to 26 U.S.C. §§ 6321–6322, liens arose in favor of the Government on April 15, 1991; December 23, 1991; February 22, 1993; March 29, 1993; May 16, 1994; and July 3, 1995. These tax liens attached to all property and rights to property of the Mungles, including the three subject parcels of real property. The Government now seeks to foreclose its tax liens on all three parcels.

The Mungles do not object to the foreclosure of the tax liens attaching to their interest in Parcel 2. No other Defendant has filed any objection to the foreclosure of the tax liens attaching to the Mungles' interest in Parcel 2. The Court may order the sale of the entire parcel, even though the

ORDER

Mungles have only a partial interest in the property. *See* 26 U.S.C. § 7403. There being no objections, the Government appears entitled to summary judgment ordering the foreclosure of the tax liens that attached to the Mungles' interest in Parcel 2.

The Mungles also do not object to the foreclosure of the tax liens attaching to their interest in Parcel 3.[2] However, Defendants Allison and Jaeger do object this foreclosure. Allison and Jaeger, without any citation to authority, contend that the Government does not have the right to foreclose against the entire fee interest in Parcel 3 or force any sale of their one-third interests along with Mr. Mungle's one-third interest.

Section 7403 of the Internal Revenue Code, which authorizes the judicial sale of real property to satisfy tax liabilities, allows the Court to order the sale of an entire parcel of real property, not just the taxpayer's interest in the property. *See* 26 U.S.C. § 7403; *see also United States v. Rodgers*, 461 U.S. 677, 693–94 (1983). Factors the Court may consider when determining whether to order a sale of an entire parcel of property include: (1) the extent to which the Government may be prejudiced if it was relegated to a forced sale of the partial interest; (2) whether the third party had an expectation that the property may be subject to a forced sale by the delinquent taxpayer or his creditors; (3) the likely prejudice to the third party; and (4) the relative value and character of the interests held in the property. *See Rodgers*, 461 U.S. at 709–11.

Application of these factors here indicate that it is within the Court's discretion to order the sale of Parcel 3 in its entirety. The Government could well be prejudiced if it was relegated to a forced sale of the partial interest, in large part because the value of Parcel 3 is approximately only $105,000. The relative low value of the property could make it difficult to sell a one-third interest in the property. Allison and Jaeger have not indicated that they were unaware that a forced sale of Mr. Mungle's interest in the property could occur. Nor have they pointed to any legal or contractual

---

[2] In their memorandum, the Mungles appear to have confused Parcel 3 with Parcel 1. The Mungles stated that they do not object to the foreclosure of the tax liens attaching to their interests in Parcels 1 and 2, as opposed to Parcels 2 and 3. *See* Docket No. 52 at 5. The Mungles clearly meant Parcels 2 and 3, not Parcels 1 and 2, because they are objecting to the foreclosure of the lien that attached to their residence, which the Government has referred to as Parcel 1, not as Parcel 3.

ORDER

bar to a forced sale of Parcel 3. There is no evidence of any prejudice to Allison and Jaeger. They do not live on the property; so, they will not be displaced by a sale. Nor is there any indication that they will be undercompensated for their interest in the property. They will each receive one-third of the proceeds from the sale. Lastly, no party holds a greater interest in the property than any other party. Although it is within the Court's discretion in this instance to order the sale of the entire Parcel 3, the Government has stated that it is willing to defer the sale of Parcel 3 until after the residence and Parcel 2 have been sold, as well as the Hawaii property.[3] Such a deferment may render the sale of Parcel 3 unnecessary, if the proceeds of the other properties were to satisfy the Mungles' tax liability.

The Mungles, however, would like the Court to also defer ordering foreclosure of the tax liens attaching their residence (Parcel 1). The Mungles, without citation to any authority, submit that the foreclosure of a lien interest in a personal residence should not be taken lightly and that this is particularly true, when, as is the case here, the residence also serves as the site of a business.[4] The Mungles suggest that it would be appropriate to defer the foreclosure of the lien interest in the residence, pending the resolution of the disputed tax assessments and the sale of the Mungles' condominium in Hawaii. The Mungles' request for a deferment appears to be based on a hope that the sale of Parcels 2 and 3 and the Hawaii condominium will satisfy their tax liability and that foreclosure of the lien interest in the residence will not be necessary.

As the Government is quick to point out, there is no exception in 26 U.S.C. § 7403 for personal residences. That said, because the Mungles' total tax liability is still in question, it would appear to make sense to defer the foreclosure of the tax liens on Parcel 3 and the Parcel 1 (the residence) until the Mungles' total tax liability is conclusively established and until it is determined whether the proceeds of the sale of Parcel 2 and the Hawaii property are sufficient to meet the Mungles' tax liability.

---

[3]The United States has brought suit in the District of Hawaii seeking to foreclose on the federal tax liens that attached to the Mungles' interest in a Maui condominium.

[4]Mrs. Mungle runs an insurance business out of her home.

ORDER

## CONCLUSION

Based on the foregoing, the Government's motion for summary judgment at **Docket No. 44** is **GRANTED IN PART AND DENIED IN PART**. It is hereby ordered that:

(1)     the assessments against the Mungles for 1988–1994 are reduced to judgment in the amount of $151,330.40 as of January 15, 2002, plus interest and statutory additions accrued thereafter less any applicable credits;

(2)     the purported transfers of (a) Parcel 1 (the residence) from the Mungles to Down Rigger Corporation; (b) Parcel 2 from the Mungles to Inversiones Quizarra, S.A. and (c) Parcel 3 from Thomas Mungle to Inversiones Quizarra, S.A. were fraudulent transfers and of no effect to the lien claims of the Government; and

(3)     the Government may foreclose on its tax liens that attached to the Mungles' interest in Parcel 2.

Dated at Anchorage, Alaska, this ____ day of June 2003.

                                                            James K. Singleton
                                                            **JAMES K. SINGLETON, JR.**
                                                            United States District Judge

A02-0054--CV (JKS)
-----------------------------------
P. BAXTER
W. CHOQUETTE (CHOQUETTE)
K. BLAIR

R. DIDIER
J. DIDIER

9

MAILED ON____6-11-03____

BY____BB____

TIMOTHY BURGESS
United States Attorney
Room C-253, Federal Building and
  United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071

KEITH S. BLAIR
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 307-0977

**RECEIVED**

MAR 2 6 2004

CHOQUETTE & FARLEIGH, LLC

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )Civil No. CV A02-0054 JKS |
| Plaintiff, | ) |
| v. | )STIPULATION TO REDUCE ASSESSMENTS )TO JUDGMENT |
| THOMAS R. MUNGLE and MARLENE C. MUNGLE ; DOWN RIGGER CORP.; SIERRA VIEW HOLDING, INC.; ROBERT and JOAN DIDIER; INVERSIONES QUIZARRA, S.A.; DAVID ALLISON; and HOWARD JAEGER, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

The United States of America and Thomas Mungle and Marlene Mungle, by their

respective counsel, hereby agree and stipulate as follows:

1. The federal tax assessments against Thomas Mungle and Marlene Mungle for the years



**EXHIBIT**

tables

B

1982 and 1985-1987 may be reduced to judgment in the amount of $427,158.15 as of January 5,

2004, plus interest and statutory additions accrued thereafter.

Respectfully submitted,

TIMOTHY BURGESS
United States Attorney

KEITH S. BLAIR
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0977

DAVID S. GROSSMAN
Reese Baffney, Schrage & Frol, P.S.
216 South Palouse Street
Walla Walla, WA 99362-3025
Telephone: (509) 525-8130
Attorney for Thomas and Marlene Mungle

**FILED**

**MAR 2 5 2004**

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____

2.25/04

A02-0054--CV (JKS)

----------------------------------

F. BAXTER
W. CHOQUETTE (CHOQUETTE)
K. BLAIR
  R. DIDIER
  J. DIDIER

It is so ORDERED.

DATED: 3/24/04

United States District Judge

-2-

## David S. Grossman

| | |
|---|---|
| **From:** | John.Snyder2@usdoj.gov |
| **Sent:** | Monday, August 22, 2005 12:45 PM |
| **To:** | grossman@rbsf.com |
| **Subject:** | RE: US v. Mungle Interest Computation |

David-

    The remaining sale amounts were $52,241.77 applied from the sale of Parcel A and $48,161.84 applied from Parcel B.

    I think that all the calculations you've provided are correct. Please call me this week to discuss the logistics of payment.

    My apologies for all of this having taken so long.

    -John Snyder
    (202) 307-6548

-----Original Message-----
From: grossman@rbsf.com [mailto:grossman@rbsf.com]
Sent: Tuesday, July 19, 2005 1:56 PM
To: Snyder, John (TAX)
Subject: US v. Mungle Interest Computation

John

Here is the interest comp that my former office did for me, reflecting thge Stip. to Reduce Assessments to Judgment (1982, 1985-1987), the Judgment (1988-1994 years) and reflecting the credit of $271,608.48 that was received by the government on 2/20/2004 from the sale of the Hawaii condominium.

By my computation, before crediting the amounts received from sale of the two Alaska parcels, the total due, as of May 20, 2005, was $346,920.43.

Please look this over and let me know whether you are in agreement.

Also, can you provide me with the amount that the IRS received from sale of the two Alaska parcels?

David S. Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse Street
Walla Walla, Washington 99362
Tel:  (509) 525-8130
Fax:  (509) 525-8726
e-mail:  grossman@rbsf.com

CONFIDENTIALITY NOTICE: This internet e-mail (and the materials attached to it, if any) are private and confidential. The information contained in this email or materials is privileged and is intended only for the use of the addressee. If you are not the intended addressee, be advised that the unauthorized use, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone (509-525-8130) AND by email that you have received this email in error and have deleted it.

-----Original Message-----
From: Julie P. Bonwell [mailto:jbonwell@lesourd.com]
Sent: Wednesday, July 06, 2005 5:02 PM
To: David S. Grossman
Subject: RE: Interest Comp



EXHIBIT

C

1

Sorry it took me so long, but here they are!
jb


INTEREST AND PENALTY DETAIL REPORT                TaxInterest Version 2005.3

Taxpayer name...: Grossman 1
07-06-05

Taxpayer ID#....:
Page 1



Event Date

| Events | Date | Amount |
|---|---|---|
| Balance (1) | | |

-------------------------------------------------------------------

| Balance | 01-05-04 | 427,158.15 |
| 427,158.15 | | |
| Payment | 02-20-04 | <271,608.48> |
| 157,702.42 | | |
| Interest Computation Date | 05-20-05 | |
| 167,449.19 | | |

-------------------------------------------------------------------

(1) Balance includes any interest and penalties accrued as of the Event Date



Interest Detail

-------------------------------------------------------------------

| Event | Date | Rate | Base | Interest |
|---|---|---|---|---|
| Balance | | | | |

-------------------------------------------------------------------

| Balance | 01-05-04 | | 427,158.15 | |
| 427,158.15 | | | | |
| Interest | 02-20-04 | 4.00 | 427,158.15 | 2,152.75 |
| 429,310.90 | | | | |

2

```
 Payment              02-20-04         <271,608.48>
157,702.42

 Interest             03-31-04  4.00    157,702.42       690.88
158,393.30

 Interest             06-30-04  5.00    158,393.30     1,981.25
160,374.55

 Interest             09-30-04  4.00    160,374.55     1,620.55
161,995.10

 Interest             12-31-04  5.00    161,995.10     2,048.71
164,043.81

 Interest             03-31-05  5.00    164,043.81     2,034.84
166,078.65

 Interest             05-20-05  6.00    166,078.65     1,370.54
167,449.19




---------------------------- Summary as of 05-20-05
--------------------------

                       Amount        Payments      Deposits
Balance

 Tax                  427,158.15   <271,608.48>       0.00
155,549.67

 Interest             11,899.52          0.00         0.00
11,899.52


-----------------------------------------------------------------------
------

 Totals              439,057.67   <271,608.48>       0.00
167,449.19


=======================================================================
======


 Prepared using: FEDERAL       IRS interest rates

 Table end date: 09-30-05      TVS Table




***********************************************************************
*******

***********************************************************************
*******

INTEREST AND PENALTY DETAIL REPORT              TaxInterest Version
                              3
```

2005.3

Taxpayer name...: Grossman 2
07-06-05

Taxpayer ID#....:
Page 1

Event Date

| Events | Date | Amount |
|--------|------|--------|

Balance (1)

--------------------------------------------------------------------------
------

| Balance | 01-15-02 | 151,330.40 |
|---------|----------|------------|

151,330.40

| Interest Computation Date | 05-20-05 | |
|---------------------------|----------|--|

179,471.24

--------------------------------------------------------------------------
------

(1) Balance includes any interest and penalties accrued as of the Event Date

Interest Detail

--------------------------------------------------------------------------
------

| Event | Date | Rate | Base | Interest |
|-------|------|------|------|----------|

Balance

--------------------------------------------------------------------------
------

| Balance | 01-15-02 | | 151,330.40 | |
|---------|----------|---|------------|--|

151,330.40

| Interest | 03-31-02 | 6.00 | 151,330.40 | 1,877.11 |
|----------|----------|------|------------|----------|

153,207.51

| Interest | 06-30-02 | 6.00 | 153,207.51 | 2,308.85 |

155,516.36

| Interest | 09-30-02 | 6.00 | 155,516.36 | 2,369.60 |

157,885.96

| Interest | 12-31-02 | 6.00 | 157,885.96 | 2,405.70 |

160,291.66

| Interest | 03-31-03 | 5.00 | 160,291.66 | 1,988.29 |

4

```
162,279.95

  Interest          06-30-03  5.00   162,279.95   2,035.46
164,315.41

  Interest          09-30-03  5.00   164,315.41   2,083.78
166,399.19

  Interest          12-31-03  4.00   166,399.19   1,686.06
168,085.25

  Interest          03-31-04  4.00   168,085.25   1,679.92
169,765.17

  Interest          06-30-04  5.00   169,765.17   2,123.50
171,888.67

  Interest          09-30-04  4.00   171,888.67   1,736.90
173,625.57

  Interest          12-31-04  5.00   173,625.57   2,195.80
175,821.37

  Interest          03-31-05  5.00   175,821.37   2,180.93
178,002.30

  Interest          05-20-05  6.00   178,002.30   1,468.94
179,471.24
```

```
---------------------------- Summary as of 05-20-05
--------------------------

                       Amount      Payments     Deposits
Balance

  Tax               151,330.40         0.00         0.00
151,330.40

  Interest           28,140.84         0.00         0.00
28,140.84

----------------------------------------------------------------------
------

  Totals            179,471.24         0.00         0.00
179,471.24

======================================================================
======

  Prepared using: FEDERAL      IRS interest rates

  Table end date: 09-30-05     TVS Table
```

5

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*

From: David S. Grossman [mailto:grossman@rbsf.com]
Sent: Wednesday, July 06, 2005 11:43 AM
To: Julie P. Bonwell
Subject: Interest Comp


Julie

Would it be possible for you or someone to run an IRS interest
computation?

What I need is:

Balance as of 1/5/2004:          $427,158.15

Payment on 2/20/2004:        $271,608.48

Interest computed to 5/20/2005

One more:

Balance as of 1/15/2002:     $151,330.40

No credits or payments

Computed to 5/20/2005

Please, pretty please?

Thanks.

David S. Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse Street
Walla Walla, Washington 99362
Tel:  (509) 525-8130
Fax:  (509) 525-8726
e-mail:  grossman@rbsf.com

CONFIDENTIALITY NOTICE: This internet e-mail (and the materials attached
to it, if any) are private and confidential. The information contained
in this email or materials is privileged and is intended only for the
use of the addressee. If you are not the intended addressee, be advised
that the unauthorized use, disclosure, copying, distribution, or the
taking of any action in reliance on the contents of this information is
strictly prohibited. If you have received this transmission in error,
please immediately notify us by telephone (509-525-8130) AND by email
that you have received this email in error and have deleted it.

TIMOTHY BURGESS
United States Attorney
Room C-253, Federal Building and
 United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071

RECEIVED

SEP - 6 2005

CHOQUETTE & FARLEIGH, LLC

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 307-6548

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS R. MUNGLE and MARLENE C.<br>MUNGLE ; DOWN RIGGER CORP.;<br>SIERRA VIEW HOLDING, INC.;<br>ROBERT and JOAN DIDIER;<br>INVERSIONES QUIZARRA, S.A.;<br>DAVID ALLISON; and<br>HOWARD JAEGER,<br><br>Defendants. | )<br>)Civil No. CV A02-0054 JKS<br>)<br>)<br>)<br>)STATUS REPORT AS OF SEPTEMBER 1,<br>)2005<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

the United States of America, by and through its undersigned counsel, hereby submits this

report on the status of this litigation as of September 1, 2005:

1. As noted in the United States' status report of June 10, 2005, two of the three parcels



**EXHIBIT**

tabbies®

D

1341325.1

of real property at issue in this action have been foreclosed upon and sold. The remaining parcel, the personal residence of defendants Thomas and Marlene Mungle ("taxpayers"), has not yet been foreclosed upon or sold.

2. The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities.

3. The taxpayers are currently pursuing refinancing of their property to obtain funds to pay the liability in full.

4. The taxpayers and the United States will file a stipulation regarding title in the property on or before September 30, 2005. This stipulation will also set dates for the payments of the outstanding tax liabilities and any additional data regarding the status of this case as of the date of the stipulation.

5. Once all payments have been made, satisfying the tax liabilities in full, the United States and the taxpayers will file a stipulation for dismissal of this action.

Respectfully submitted,

TIMOTHY BURGESS
United States Attorney

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6548

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following parties on June 10, 2005:

David Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St
Walla Walla, Washington 99362

Robert & Joan Didier
5331 Shaune Dr.
Juneau, Alaska 99801

William L. Choquette
Choquette & Farleigh
629 L St., Suite 101
Anchorage, AK 99501

Fred Baxter
Baxter Bruce & Sullivan P.C.
PO Box 32819
Juneau, AK 99803

TIMOTHY BURGESS
United States Attorney
Room C-253, Federal Building and
 United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044-0683
Telephone: (202) 307-6548

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)Civil No. CV A02-0054 JKS |
| Plaintiff, | )<br>) |
| v. | )<br>)STATUS REPORT AS OF OCTOBER 31, |
| THOMAS R. MUNGLE and MARLENE C.<br>MUNGLE ; DOWN RIGGER CORP.;<br>SIERRA VIEW HOLDING, INC.;<br>ROBERT and JOAN DIDIER;<br>INVERSIONES QUIZARRA, S.A.;<br>DAVID ALLISON; and<br>HOWARD JAEGER, | )2005<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

The United States of America, by and through its undersigned counsel and pursuant to the

Court's order, hereby submits this report on the status of this litigation as of October 31, 2005:

 1. As noted in the United States' prior status reports, two of the three parcels of real

1401776.1

**EXHIBIT**

E

property at issue in this action have been foreclosed upon and sold.  The remaining parcel, the personal residence of defendants Thomas and Marlene Mungle ("taxpayers"), has not yet been foreclosed upon or sold.

2. The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities.

3. The taxpayers and the United States recently filed a stipulation regarding title in the property.  The parties request that the Court enter the judgment attached to that stipulation in order to expedite the taxpayers' refinancing of the property.

4. The taxpayers are currently pursuing refinancing of their property to obtain funds to pay the liability in full.  Mr. Mungle has had discussions with his banker and is making application for an appropriate loan.  Once this loan is obtained, the parties will file a further stipulation regarding dates for payment, as well as any further issues apparent at the time of the stipulation.  Once all payments have been made, satisfying the tax liabilities in full, the United States and the taxpayers will file a stipulation for dismissal of this action.

5. As mentioned in the previous status report, Mr. Mungle is currently required to travel outside the United States.  He will return to the United States soon in order to complete the loan application.

//

//

6. The parties will provide a status report to Court on or before December 5, 2005

apprising the Court of the status of this matter.

Respectfully submitted,

TIMOTHY BURGESS
United States Attorney

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6548

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following parties on November 1, 2005:

David Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St
Walla Walla, Washington 99362

Robert & Joan Didier
5331 Shaune Dr.
Juneau, Alaska 99801

William L. Choquette
Choquette & Farleigh
629 L St., Suite 101
Anchorage, AK 99501

Fred Baxter
Baxter Bruce & Sullivan P.C.
PO Box 32819
Juneau, AK 99803

TIMOTHY BURGESS
United States Attorney
Room C-253, Federal Building and
  United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044-0683
Telephone: (202) 307-6548

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )Civil No. CV A02-0054 JKS |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )STATUS REPORT AS OF NOVEMBER 29, |
| THOMAS R. MUNGLE and MARLENE C. | )2005 |
| MUNGLE ; DOWN RIGGER CORP.; | ) |
| SIERRA VIEW HOLDING, INC.; | ) |
| ROBERT and JOAN DIDIER; | ) |
| INVERSIONES QUIZARRA, S.A.; | ) |
| DAVID ALLISON; and | ) |
| HOWARD JAEGER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

The United States of America, by and through its undersigned counsel and pursuant to the

Court's order, hereby submits this report on the status of this litigation as of November 29, 2005:

    1. As noted in the United States' prior status reports, two of the three parcels of real



EXHIBIT

tabbies®   F

1441289.1

property at issue in this action have been foreclosed upon and sold.  The remaining parcel, the

personal residence of defendants Thomas and Marlene Mungle ("taxpayers"), has not yet been

foreclosed upon or sold.

2.  The Department of Justice and Thomas and Marlene Mungle have obtained and agreed

upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities.

3.  The taxpayers and the United States recently filed a stipulation regarding title in the

property.  (The parties request that the Court enter the judgment attached to that stipulation in

order to expedite the taxpayers' refinancing of the property.)

4.  The taxpayers are currently pursuing refinancing of their property to obtain funds to

pay the liability in full.  Mr. Mungle has now returned from traveling abroad and expects the loan

application to close sometime in December.  Once the closing is completed, the parties will file a

further stipulation regarding dates for payment, as well as any further issues apparent at the time

of the stipulation.  Once all payments have been made, satisfying the tax liabilities in full, the

United States and the taxpayers will file a stipulation for dismissal of this action.

//

//

6. The parties will provide a further status report to Court on or before January 5, 2006 apprising the Court of the status of this matter.

Respectfully submitted,

TIMOTHY BURGESS
United States Attorney

JOHN B. SNYDER III
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6548

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following parties on November 1, 2005:

David Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St
Walla Walla, Washington 99362

Robert & Joan Didier
5331 Shaune Dr.
Juneau, Alaska 99801

William L. Choquette
Choquette & Farleigh
629 L St., Suite 101
Anchorage, AK 99501

Fred Baxter
Baxter Bruce & Sullivan P.C.
PO Box 32819
Juneau, AK 99803

TIMOTHY BURGESS
United States Attorney
Room C-253, Federal Building and
  United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044-0683
Telephone: (202) 307-6548

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )Civil No. CV A02-0054 JKS |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )STATUS REPORT AS OF DECEMBER 29, |
| THOMAS R. MUNGLE and MARLENE C. | )2005 |
| MUNGLE ; DOWN RIGGER CORP.; | ) |
| SIERRA VIEW HOLDING, INC.; | ) |
| ROBERT and JOAN DIDIER; | ) |
| INVERSIONES QUIZARRA, S.A.; | ) |
| DAVID ALLISON; and | ) |
| HOWARD JAEGER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

The United States of America, by and through its undersigned counsel and pursuant to the

Court's order, hereby submits this report on the status of this litigation as of December 29, 2005:

1. As noted in the United States' prior status reports, two of the three parcels of real

1484866.1

**EXHIBIT**

G

property at issue in this action have been foreclosed upon and sold. The remaining parcel, the personal residence of defendants Thomas and Marlene Mungle ("taxpayers"), has not yet been foreclosed upon or sold.

2. The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities.

3. The taxpayers and the United States filed a stipulation regarding title in the property, which the Court has approved.

4. The taxpayers are currently pursuing refinancing of their property to obtain funds to pay the liability in full. Mr. Mungle has now returned from traveling abroad and expects the loan application to close in early January. The planned closing in December was delayed due to the need to make repairs to the property, which have now been finished. Once the closing is completed, the parties will file a further stipulation regarding dates for payment, as well as any further issues apparent at the time of the stipulation. Once all payments have been made, satisfying the tax liabilities in full, the United States and the taxpayers will file a stipulation for dismissal of this action.

//

//

6.  The parties will provide a further status report to Court on or before February 6, 2006

apprising the Court of the status of this matter.

DATED this 29th day of December, 2005.

Respectfully submitted,

TIMOTHY BURGESS
United States Attorney

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6548

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following parties on December 29, 2005:

David Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St
Walla Walla, Washington 99362

Robert & Joan Didier
5331 Shaune Dr.
Juneau, Alaska 99801

William L. Choquette
Choquette & Farleigh
629 L St., Suite 101
Anchorage, AK 99501

Fred Baxter
Baxter Bruce & Sullivan P.C.
PO Box 32819
Juneau, AK 99803

DEBORAH M. SMITH
Acting United States Attorney
Room C-253, Federal Building and
  United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 307-6548
john.snyder2@usdoj.gov
Western.Taxcivil@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )Civil No. CV A02-0054 JKS |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )STATUS REPORT AS OF MARCH 31, 2006 |
| THOMAS R. MUNGLE and MARLENE C. | ) |
| MUNGLE ; DOWN RIGGER CORP.; | ) |
| SIERRA VIEW HOLDING, INC.; | ) |
| ROBERT and JOAN DIDIER; | ) |
| INVERSIONES QUIZARRA, S.A.; | ) |
| DAVID ALLISON; and | ) |
| HOWARD JAEGER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

The United States of America, by and through its undersigned counsel and pursuant to the

Court's order, hereby submits this report on the status of this litigation as of March 31, 2006:



EXHIBIT

H

1. As noted in the United States' prior status reports, two of the three parcels of real property at issue in this action have been foreclosed upon and sold. The remaining parcel, the personal residence of defendants Thomas and Marlene Mungle ("taxpayers"), has not yet been foreclosed upon or sold.

2. The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities.

3. The taxpayers and the United States filed a stipulation regarding title in the property, which the Court has approved.

4. The taxpayers are currently pursuing refinancing of their property to obtain funds to pay the liability in full. Because additional repairs to the property were necessary, the taxpayers' closing on the property has been delayed. The taxpayers expect the loan application to close within thirty days. Once the closing is completed, the parties will file a further stipulation regarding dates for payment, as well as any further issues apparent at the time of the stipulation. Once all payments have been made, satisfying the tax liabilities in full, the United States and the taxpayers will file a stipulation for dismissal of this action.

//

//

6. The parties will provide a further status report to Court on or before May 8, 2006

apprising the Court of the status of this matter.

DATED this 31st day of March, 2006.

Respectfully submitted,

DEBORAH M. SMITH
Acting United States Attorney


s/ John B. Snyder, III
JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 307-6548
john.snyder2@usdoj.gov
Western.Taxcivil@usdoj.gov

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following parties on March 31, 2006:

| | |
|---|---|
| David Grossman<br>Reese, Baffney, Schrag & Frol, P.S.<br>216 So. Palouse St<br>Walla Walla, Washington 99362 | Robert & Joan Didier<br>5331 Shaune Dr.<br>Juneau, Alaska 99801 |
| William L. Choquette<br>Choquette & Farleigh<br>629 L St., Suite 101<br>Anchorage, AK 99501 | Fred Baxter<br>Baxter Bruce & Sullivan P.C.<br>PO Box 32819<br>Juneau, AK 99803 |

s/ John B. Snyder, III

DEBORAH M. SMITH
Acting United States Attorney
Room C-253, Federal Building and
  United States Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071

JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044-0683
Telephone: (202) 307-6548
john.snyder2@usdoj.gov
Western.Taxcivil@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )Civil No. CV A02-0054 JKS |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )STATUS REPORT AS OF MAY 5, 2006 |
| THOMAS R. MUNGLE and MARLENE C. | ) |
| MUNGLE ; DOWN RIGGER CORP.; | ) |
| SIERRA VIEW HOLDING, INC.; | ) |
| ROBERT and JOAN DIDIER; | ) |
| INVERSIONES QUIZARRA, S.A.; | ) |
| DAVID ALLISON; and | ) |
| HOWARD JAEGER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

The United States of America, by and through its undersigned counsel and pursuant to the

Court's order, hereby submits this report on the status of this litigation as of May 5, 2006:



EXHIBIT

I

1. As noted in the United States' prior status reports, two of the three parcels of real property at issue in this action have been foreclosed upon and sold. The remaining parcel, the personal residence of defendants Thomas and Marlene Mungle ("taxpayers"), has not yet been foreclosed upon or sold.

2. The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities.

3. The taxpayers and the United States filed a stipulation regarding title in the property, which the Court has approved.

4. The taxpayers are currently pursuing refinancing of their property to obtain funds to pay the liability in full. Because additional repairs to the property were necessary, the taxpayers' closing on the property has been delayed. Due to the delay, it will be necessary for the taxpayers to obtain a new appraisal of the property before the closing. The taxpayers expect the loan application to close within thirty days. Once the closing is completed, the parties will file a further stipulation regarding dates for payment, as well as any further issues apparent at the time of the stipulation. Once all payments have been made, satisfying the tax liabilities in full, the United States and the taxpayers will file a stipulation for dismissal of this action.

//

//

STATUS REPORT

- 2 -



EXHIBIT

I

6. The parties will provide a further status report to Court on or before June 12, 2006

apprising the Court of the status of this matter.

DATED this 5th day of May, 2006.

Respectfully submitted,

DEBORAH M. SMITH
Acting United States Attorney

s/ John B. Snyder, III
JOHN B. SNYDER, III
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6548
john.snyder2@usdoj.gov
Western.Taxcivil@usdoj.gov

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following parties on March 31, 2006:

David Grossman
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse St
Walla Walla, Washington 99362

Robert & Joan Didier
5331 Shaune Dr.
Juneau, Alaska 99801

William L. Choquette
Choquette & Farleigh
629 L St., Suite 101
Anchorage, AK 99501

Fred Baxter
Baxter Bruce & Sullivan P.C.
PO Box 32819
Juneau, AK 99803

s/ John B. Snyder, III

## Other Documents
3:02-cv-00054-JKS United States of America v. Mungle et al

### U.S. District Court

### District of Alaska

Notice of Electronic Filing

The following transaction was received from Snyder, John entered on 5/5/2006 at 8:14 AM ADT and filed on 5/5/2006

| | |
|---|---|
| **Case Name:** | United States of America v. Mungle et al |
| **Case Number:** | 3:02-cv-54 |
| **Filer:** | United States of America |
| **Document Number:** | 110 |

**Docket Text:**
STATUS REPORT *as of May 5, 2006* by United States of America. (Snyder, John)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105331613 [Date=5/5/2006] [FileNumber=90248-0] [5db1175f8333cf948b4dbf0e177e2ca0d048260b9e4541a5d6b7da13f1c6859d65c2f2 552f9965c86224d2e61737e30f01fecdcc27ba78cd62c8f72e93870b97]]

**3:02-cv-54 Notice will be electronically mailed to:**

William L. Choquette    cflaw@alaska.com, choquette@alaska.com

**3:02-cv-54 Notice will be delivered by other means to:**

Fred J. Baxter
Baxter Bruce et al.
POB 32819
Juneau, AK 99803

Keith S. Blair
U.S. Department of Justice
POB 683
Ben Franklin Station
Washington, DC 20044-0683

Joan Didier
5331 Shaune Dr
Juneau, AK 99801

Robert Didier
Shaune Dr
Juneau, AK 99801

David S. Grossman
Reese Baffney et al.
216 S. Palouse Street
Walla Walla, WA 99362

# Reese, Baffney, Schrag & Frol, P.S.

ATTORNEYS AT LAW

216 South Palouse Street
Walla Walla, Washington 99362-3025
Telephone (509) 525-8130
FAX (509) 525-8726

JOHN M. REESE
THOMAS K. BAFFNEY
STEVEN C. FROL
RENE ERM II*
DAVID S. GROSSMAN
Gary M. Schrag (1952-2002)
*ALSO ADMITTED IN OREGON

Sender's E-mail:
grossman@rbsf.com

June 19, 2006

**Via Facsimile and U.S. Mail**

Robert S. Watkins, Esq.
Chief, Civil Trial Section
Western Region
U.S. Department of Justice, Tax Div.
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044-0683

Re:    **United States v. Thomas and Marlene Mungle**
       **No. A02-0054-CV          (USDC D. Alaska)**
       **Your Ref: 5-6-2256/CMN 2002102012**

Dear Mr. Watkins:

This matter was assigned to John Snyder, who I understand has left the Tax Division.

Mr. Snyder may have informed you that the defendants are in the process of obtaining a refinance of their home in Juneau, Alaska, which is the subject of this action to reduce assessments to judgment and to foreclose the tax liens attaching to the property. Mr. Snyder and I previously reached agreement on the outstanding balance due, but we will require an update of that amount, since interest has continued to accrue.

Enclosed is a Preliminary Commitment for Title Insurance, issued by Pacific Northwest Title Insurance Company. As noted in the preliminary commitment, Alaska property records reflect that title to the property is vested in Down Rigger Corp. The Court, however, previously ruled that the transfer from the Mungles to Down Rigger Corp. was a fraudulent transfer and of no effect as to the claims of the United States. Nevertheless, I anticipate Pacific Northwest Title will require something further from the Court to establish that title to the property is vested in the Mungles and that any interest of Down Rigger Corp. has been extinguished. Keith Blair and I obtained a similar stipulated order from the Hawaii District Court in a related case that involved a Condominium, and I suggest we obtain a similar order in connection with the Alaska case. In

DSG:dg
5870.01

**EXHIBIT**

tabbies®

J

Robert S. Watkins, Esq.
Chief, Civil Trial Section
June 19, 2006
Page 2

that regard, I expect to speak with the title insurance company to determine exactly what language will be required.

In summary, it would be helpful to have an up-to-date payoff of the Court's judgment. I will work with the title insurance company to determine what is needed to clarify that title to the property is vested in the Mungles, and not Down Rigger Corp. Finally, I expect that the title insurance company will require that all of the tax liens listed in the preliminary commitment be released.

Please let me know whether this file has been reassigned. If it has not been reassigned, please consider doing so as soon as possible.

Very truly yours,

**REESE, BAFFNEY, SCHRAG & FROL, P.S.**

/s/

David S. Grossman

DSG:dg
Enclosure
cc:    Tom Mungle (via e-mail)

DSG:dg
5870.01

# Reese, Baffney, Schrag & Frol, P.S.

ATTORNEYS AT LAW

216 South Palouse Street
Walla Walla, Washington 99362-3025
Telephone (509) 525-8130
FAX (509) 525-8726

JOHN M. REESE
THOMAS K. BAFFNEY
STEVEN C. FROL
RENE ERM II*
DAVID S. GROSSMAN
Gary M. Schrag (1952-2002)
*ALSO ADMITTED IN OREGON

Sender's E-mail:
grossman@rbsf.com

September 7, 2006

**Via Facsimile, E-mail and U.S. Mail**

Goud P. Maragani
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683

    **Re:**    **United States v. Thomas R. Mungle, et al.**
              **No. CV A02-0054 JKS (USDC D. Alaska)**

Dear Mr. Maragani:

        When we spoke on the telephone the other day, you indicated that the IRS has computed the pay-off amount for all liabilities owed by the Mungles in connection with the years in suit at approximately $160,000. Please send me confirmation in writing regarding the payoff. I will need this to coordinate with the lender and title company that is closing the Mungles' refinance. Once we get closer to a closing date, I will need a payoff as of the date of anticipated disbursement.

        As we have discussed before, an order was entered previously confirming title to the Juneau property in the Mungles. This should be sufficient to satisfy the title company.

        Finally, Mr. Mungle indicates the lender requires an "as built" survey, which he is in the process of obtaining. Once that is out of the way, we expect to be able to close the transaction promptly.

                        Very truly yours,

                        **REESE, BAFFNEY, SCHRAG & FROL, P.S.**

                        /s/

                        David S. Grossman

DSG:dg
Enclosure



EXHIBIT
K

Goud P. Maragani
Trial Attorney, Tax Division
August 1, 2006
Page 2

cc:     Thomas and Marlene Mungle (via e-mail)

# *Reese, Baffney, Schrag & Frol, P.S.*

ATTORNEYS AT LAW

216 South Palouse Street
Walla Walla, Washington 99362-3025
Telephone (509) 525-8130
FAX (509) 525-8726

JOHN M. REESE
THOMAS K. BAFFNEY
STEVEN C. FROL
RENE ERM II*
DAVID S. GROSSMAN
Gary M. Schrag (1952-2002)

*ALSO ADMITTED IN OREGON

Sender's E-mail:
grossman@rbsf.com

September 29, 2006

**Via Facsimile and U.S. Mail**

Goud P. Maragani
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044-0683

> **Re:    United States v. Thomas R. Mungle, et al.**
> **No. CV A02-0054 JKS (USDC D. Alaska)**

Dear Mr. Maragani:

We have been going around in circles for well over a month now regarding the amount remaining due on the assessments made against the Mungles.  At this point, I feel it is necessary to review the history of our discussions on this.

A.    In a July 31, 2006, telephone conversation, you stated that you had received a payoff figure from the IRS of approximately $800,000.  I indicated that this could not possibly be the case and that your predecessor, John Snyder, and I had agreed approximately a year ago that the amount was approximately $250,000.

B.    I recognized that you had taken this matter over from John Snyder and were not fully familiar with the background of the case.  In a letter dated August 1, 2006, I detailed the history of the Court's judgments and outlined my computation taking into account the three separate credits resulting from the sale of the Mungles' Hawaii and Alaska properties.  I used credits of $52,241.77 and $48,161.84 for the two Alaska parcels, which amounts may not be accurate in view of the fact that the Mungles owned only fractional interests.  The computation reflected the amount realized from the sale of the Hawaii condominium: $271,608.48.  I noted that the IRS's computation (of

**EXHIBIT**

tabbies®

L

Goud P. Maragani
Trial Attorney, Tax Division
September 29, 2006
Page 2

$800,000) was likely based on the original assessments and was in error. I asked that you review the computations and get back to me.

C.    In a September 6, 2006, telephone conversation, you stated that you had received a letter from the IRS stating that the payoff figure was $159,513.63.

D.    On October 7, 2006, I wrote to you referencing our September 6, 2006, conversation and asking that you send me a letter to confirm the payoff amount. I advised that I would need the payoff amount in order for the Mungles' lender to move forward with the refinancing.

E.    In a September 15, 2006, telephone conversation, you advised that the payoff number was approximately $578,000. I expressed to you that this could not possibly be correct in light of the Court's determinations and the application of credits.

F.    On September 15, 2006, without having provided any credible basis for a payoff figure that would allow the Mungles to proceed with the refinance of their home, you served the government's motion to foreclose the tax liens on the Mungles' residence.

G.    In a September 19, 2006, telephone conversation, you advised that Revenue Agent Cartha Hayward was looking into the computation issue, and you would get back to me.

H.    On September 26, 2006, I wrote to you stating, "Have you heard anything further from the IRS regarding the claimed pay-off figure? Mr. and Mrs. Mungle can do nothing further with respect to the refinance until we agree on the amount due and owing."

I recognize that the Mungles first began pursuing a refinance of their home approximately one year ago. At that time, John Snyder and I agreed that the amount remaining due was approximately $250,000. Due to the need to make repairs to the house so that it would appraise, the refinance was delayed. However, at all times it has been essential that the parties agree on the amount of the payoff to the IRS so that the Mungles could complete their refinance. I expect that once we have agreement on a payoff figure, the Mungles can close the transaction within two weeks.

The Mungles' tax liabilities were fixed by the Court as of January 2002 and January 2004, *with interest computed to those dates*. These amounts were $151,330.40 and $427,158.15, respectively, and the total of those liabilities was $578,488.55. A credit of $271,608.48 was applied from the sale of the Hawaii Condominium in 2004, and credits have been applied from the sale of the two Alaska properties. How the government can contend that the payoff amount is $578,000 is beyond me.

Goud P. Maragani
Trial Attorney, Tax Division
September 29, 2006
Page 3

I ask again that you advise the amount the government contends remains due and owing *and provide me with the basis for that computation*.  In the meantime, I will be preparing a response to the government's motion to foreclose, which response will be filed by the due date of Tuesday. October 3, 2006.

Very truly yours,

**REESE, BAFFNEY, SCHRAG & FROL, P.S.**

/s/

David S. Grossman

DSG:dg
cc:    Thomas and Marlene Mungle (via e-mail)
William F. Choquette (via e-mail)

Taxpayer name...: Mungle 1982                                                    09-29-06
Taxpayer ID#....:                                                               Page 1

| Events | Date | Amount | Event Date<br>Balance (1) |
|---|---|---|---|
| Tax | 01-05-04 | 427,158.15 | 427,158.15 |
| Payment | 02-20-04 | <271,608.48> | 157,702.42 |
| Payment | 10-14-04 | <48,161.84> | |
| Payment | 10-14-04 | <52,241.77> | 61,901.59 |
| Payment | 11-03-04 | <12,000.00> | |
| Payment | 11-03-04 | <17,000.00> | 33,070.94 |
| Payment | 08-03-05 | <516.47> | |
| Payment | 08-03-05 | <516.47> | 33,415.10 |
| | | | |
| Interest Computation Date | 11-01-06 | | 36,527.58 |

(1) Balance includes any interest and penalties accrued as of the Event Date

Interest Detail

| Event | Date | Rate | Base | Interest | Balance |
|---|---|---|---|---|---|
| Tax | 01-05-04 | | 427,158.15 | | 427,158.15 |
| Interest | 02-20-04 | 4.00 | 427,158.15 | 2,152.75 | 429,310.90 |
| Payment | 02-20-04 | | <271,608.48> | | 157,702.42 |
| Interest | 03-31-04 | 4.00 | 157,702.42 | 690.88 | 158,393.30 |
| Interest | 06-30-04 | 5.00 | 158,393.30 | 1,981.25 | 160,374.55 |
| Interest | 09-30-04 | 4.00 | 160,374.55 | 1,620.55 | 161,995.10 |
| Interest | 10-14-04 | 5.00 | 161,995.10 | 310.10 | 162,305.20 |
| Payment | 10-14-04 | | <48,161.84> | | 114,143.36 |
| Payment | 10-14-04 | | <52,241.77> | | 61,901.59 |
| Interest | 11-03-04 | 5.00 | 61,901.59 | 169.35 | 62,070.94 |
| Payment | 11-03-04 | | <12,000.00> | | 50,070.94 |
| Payment | 11-03-04 | | <17,000.00> | | 33,070.94 |
| Interest | 12-31-04 | 5.00 | 33,070.94 | 263.06 | 33,334.00 |
| Interest | 03-31-05 | 5.00 | 33,334.00 | 413.48 | 33,747.48 |
| Interest | 06-30-05 | 6.00 | 33,747.48 | 508.58 | 34,256.06 |
| Interest | 08-03-05 | 6.00 | 34,256.06 | 191.98 | 34,448.04 |
| Payment | 08-03-05 | | <516.47> | | 33,931.57 |
| Payment | 08-03-05 | | <516.47> | | 33,415.10 |
| Interest | 09-30-05 | 6.00 | 33,415.10 | 320.08 | 33,735.18 |
| Interest | 12-31-05 | 7.00 | 33,735.18 | 600.44 | 34,335.62 |
| Interest | 03-31-06 | 7.00 | 34,335.62 | 597.73 | 34,933.35 |
| Interest | 06-30-06 | 7.00 | 34,933.35 | 614.95 | 35,548.30 |
| Interest | 09-30-06 | 8.00 | 35,548.30 | 724.01 | 36,272.31 |
| Interest | 11-01-06 | 8.00 | 36,272.31 | 255.27 | 36,527.58 |



EXHIBIT

M

```
------------------------------ Summary as of 11-01-06 ------------------------
                     Amount        Payments       Deposits        Balance
Tax              427,158.15      <402,045.03>         0.00      25,113.12
Interest          11,414.46              0.00         0.00      11,414.46
------------------------------------------------------------------------------
Totals           438,572.61      <402,045.03>         0.00      36,527.58
==============================================================================
```

Prepared using: FEDERAL       IRS interest rates
Table end date: 12-31-06      TVS Table

Taxpayer name...:
Taxpayer ID#....:                                                      Page 1

| Events | Date | Amount | Event Date Balance (1) |
|---|---|---|---|
| Tax | 01-15-02 | 151,330.40 | 151,330.40 |
| Payment | 10-14-04 | 0.00 | |
| Payment | 10-14-04 | 0.00 | 173,957.94 |
| Interest Computation Date | 11-01-06 | | 198,621.78 |

(1) Balance includes any interest and penalties accrued as of the Event Date

Interest Detail

| Event | Date | Rate | Base | Interest | Balance |
|---|---|---|---|---|---|
| Tax | 01-15-02 | | 151,330.40 | | 151,330.40 |
| Interest | 03-31-02 | 6.00 | 151,330.40 | 1,877.11 | 153,207.51 |
| Interest | 06-30-02 | 6.00 | 153,207.51 | 2,308.85 | 155,516.36 |
| Interest | 09-30-02 | 6.00 | 155,516.36 | 2,369.60 | 157,885.96 |
| Interest | 12-31-02 | 6.00 | 157,885.96 | 2,405.70 | 160,291.66 |
| Interest | 03-31-03 | 5.00 | 160,291.66 | 1,988.29 | 162,279.95 |
| Interest | 06-30-03 | 5.00 | 162,279.95 | 2,035.46 | 164,315.41 |
| Interest | 09-30-03 | 5.00 | 164,315.41 | 2,083.78 | 166,399.19 |
| Interest | 12-31-03 | 4.00 | 166,399.19 | 1,686.06 | 168,085.25 |
| Interest | 03-31-04 | 4.00 | 168,085.25 | 1,679.92 | 169,765.17 |
| Interest | 06-30-04 | 5.00 | 169,765.17 | 2,123.50 | 171,888.67 |
| Interest | 09-30-04 | 4.00 | 171,888.67 | 1,736.90 | 173,625.57 |
| Interest | 12-31-04 | 5.00 | 173,625.57 | 2,195.80 | 175,821.37 |
| Interest | 03-31-05 | 5.00 | 175,821.37 | 2,180.93 | 178,002.30 |
| Interest | 06-30-05 | 6.00 | 178,002.30 | 2,682.51 | 180,684.81 |
| Interest | 09-30-05 | 6.00 | 180,684.81 | 2,753.09 | 183,437.90 |
| Interest | 12-31-05 | 7.00 | 183,437.90 | 3,264.95 | 186,702.85 |
| Interest | 03-31-06 | 7.00 | 186,702.85 | 3,250.20 | 189,953.05 |
| Interest | 06-30-06 | 7.00 | 189,953.05 | 3,343.84 | 193,296.89 |
| Interest | 09-30-06 | 8.00 | 193,296.89 | 3,936.84 | 197,233.73 |
| Interest | 11-01-06 | 8.00 | 197,233.73 | 1,388.05 | 198,621.78 |

Taxpayer name...:
Taxpayer ID#....:

```
------------------------------ Summary as of 11-01-06 ------------------------
                        Amount        Payments        Deposits         Balance
Tax                 151,330.40            0.00            0.00      151,330.40
Interest             47,291.38            0.00            0.00       47,291.38
-------------------------------------------------------------------------------
Totals              198,621.78            0.00            0.00      198,621.78
===============================================================================
```

Prepared using: FEDERAL       IRS interest rates
Table end date: 12-31-06      TVS Table

# Reese, Baffney, Schrag & Frol, P.S.

ATTORNEYS AT LAW

216 South Palouse Street
Walla Walla, Washington 99362-3025
Telephone (509) 525-8130
FAX (509) 525-8726

JOHN M. REESE
THOMAS K. BAFFNEY
STEVEN C. FROL
RENE ERM II*
DAVID S. GROSSMAN
Gary M. Schrag (1952-2002)

*ALSO ADMITTED IN OREGON

Sender's E-mail:
grossman@rbsf.com

October 17, 2006

**Via Facsimile and U.S. Mail**

Goud P. Maragani
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683

     **Re:**    **United States v. Thomas R. Mungle, et al.**
           **No. CV A02-0054 JKS (USDC D. Alaska)**

Dear Mr. Maragani:

    When we spoke on the telephone today, you stated that the Revenue Agent has computed the amount outstanding with respect to the Mungles' tax liabilities at $581,841.69. This cannot be correct.

    The Court's Order on Summary Judgment fixed the amount for taxable years 1988 through 1994 at $151,330.40 as of January 15, 2002, with accrued interest and penalties included as of that date. The parties' Stipulation and Order established the liability for the 1982 and 1985-1987 tax years as being $427,158.15 as of January 5, 2004, again with accrued interest and penalties included as of that date. The **total** of the Mungle's tax liabilities thus was fixed at $578,488.55, before application of credits.

    Credits to be applied against the total of $578,488.55 are:

    $271,608.48, applied on February 20, 2004 (from sale of Maui Condominium);
    $  52,241.77, per Order Confirming Sale of Parcel A and B, dated 1/12/2005;
    $  48,161.84, per Order Confirming Sale of Parcel A and B, dated 1/12/2005.

    Thus, the IRS should have applied credits totaling $372,012.09 to the total liability of $578,488.55. Without including accrued interest, the total liability should total $206,476.46.

DSG/Mungle
5870.01



EXHIBIT

N

Goud P. Maragani
Trial Attorney, Tax Division
October 17, 2006Page 2

I have run an interest computation using the Tax Interest program sold by Time Value Software. I applied the above credits, plus additional credits of $12,000, $17,000, $516.48 and $516.47 (which appear on the transcript of account for 1982) to the liability established by the Stipulation and Order relating to the 1982 and 1985-1987 tax years. The result I get is:

| | |
|---|---|
| 1988-1994 tax years: | $198,621.78 |
| 1982, 1985-1987 tax years: | $ 36,527.58 |
| **Total:** | **$235,149.36** |

Your Revenue Agent clearly is not taking into account the Court's Order on Summary Judgment and the Stipulation and Order.

I would prefer it if we could reach agreement on the total liability. The calculations are not complex, and penalties long ago maxed out, so all we should be dealing with is accrued interest. Please check the Revenue Agent's computations and call me at your earliest convenience.

Very truly yours,

**REESE, BAFFNEY, SCHRAG & FROL, P.S.**

/s/

David S. Grossman

DSG:dg
cc:    Thomas and Marlene Mungle (via e-mail)
       William F. Choquette (via e-mail)