David S. Grossman
WSBA No. 18428
Reese, Baffney, Schrag & Frol, P.S.
216 So. Palouse Street
Walla Walla, WA  99362
Telephone:  (509) 525-8130
Telefax:  (509) 525-8726

William L. Choquette
ABA No. 7410066
Choquette & Farleigh, LLC
629 L Street, Suite 101
Anchorage, Alaska  99501
Telephone:  (907) 274-4626
Telefax:  (907) 274-9819

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. A02-0054 CV (JKS) |
| Plaintiff, | ) DECLARATION OF THOMAS R. MUNGLE IN RESPONSE AND OPPOSITION TO UNITED STATES' MOTION TO CORRECT A CLERICAL ERROR IN THE COURT'S ORDER OF JUNE 11, 2003 AND MOTION FOR ENTRY OF JUDGMENT AGAINST THOMAS R. MUNGLE AND MARLENE C. MUNGLE |
| vs. | |
| THOMAS R. MUNGLE and MARLENE C. MUNGLE; DOWN RIGGER CORP.; SIERRA VIEW HOLDING, INC.; ROBERT and JOAN DIDIER; INVERSIONES QUIZARRRA, S.A.; DAVID ALLISON; AND HOWARD JAEGER, | |
| Defendants. | |

I, THOMAS R. MUNGLE, declare as follows pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the State of Alaska and the United States of America.

1.  I am one of the defendants in this lawsuit. I am of legal age and am competent to testify to the matters set forth in this Declaration.

2.  The United States filed this suit against me and my wife, Marlene C. Mungle, seeking to reduce to judgment certain assessments for federal income tax for the tax years 1982 and 1985-1994.

3.  In late 2002, the United States filed its Motion for Summary Judgment, asking the Court to enter summary judgment in its favor and to enter judgment against my wife and me for the federal taxes at issue. On June 11, 2003, the Court issued its Order in which it found that genuine issues of material fact precluded summary judgment for the tax years 1982, 1985, 1986 and 1987. The Court did agree to enter judgment against us for the tax years 1988 through 1994, and the Order provided that "[t]he amount due and owing for the years 1988-1994 is $151,330.40 as of January 15, 2002, plus interest and statutory additions accrued thereafter less any applicable credits." The Court's order cited to the government's Certificates of Assessments and Payments for the years at issue [Docket No. 44, Ex. A].

4.  Throughout the years before this suit had been filed, my wife and I had attempted to set up meetings with the IRS to review its tax computations for the years 1982, 1985, 1986 and 1987. Following entry of the Court's Order of June 11, 2003, my attorney pursued efforts to arrange for our CPA, Cliff James, to meet with an IRS representative to review and, hopefully, agree on the amount of our liabilities for 1982 and 1985-1987. Those efforts were ultimately successful, and as a result we and the government agreed that our tax liability for those years was $427,158.15 as of January 5, 2004, together with interest and statutory additions from that date forward. That agreement was memorialized in a Stipulation to Reduce Assessments to Judgment, which was entered by this Court as an Order on March 24, 2004.

5.      Based on the two Court decisions – the June 11, 2003, Order on summary judgment, and the March 24, 2004, Stipulation and Order, our tax liability was determined and fixed by the Court at $578,488.55, together with interest from January 15, 2005 (in the case of the 1987-1994 tax years) and January 5, 2004 (in the case of the 1982 and 1985-1987 tax years).

6.      After the amount of the liabilities was determined, my wife and I concluded that the best approach to resolving this matter would be to pursue the sale of the Hawaii condominium, which was the subject of a lawsuit that the government brought in Hawaii, and the two undeveloped parcels in SE Alaska. The Hawaii condominium was sold voluntarily and my attorney determined that the sum of $271,608.48 was applied to our tax liabilities as a result of that sale. We anticipated that once Parcels A and B in SE Alaska were sold, we could pursue a refinance of our home (which is also the location of my wife's insurance business) in Juneau, and pay off in full our tax obligations.

7.      Because the two SE Alaska parcels were jointly owned with third parties, it was most expedient to have the government proceed with foreclosure of the tax liens on those two properties so that the other ownership interests could be extinguished. The sale of Parcel A netted $52,241.77 to be applied to our tax liabilities, and the sale of Parcel B netted $48,161.84 to be applied to our tax liabilities, as set forth in the Court's Order Confirming Sale, 1/12/2005.

8.      After application of the proceeds from the sale of the Hawaii condominium and Parcels A and B, my wife and I anticipated that we would be able to refinance our Juneau house to obtain funds to pay off in full the remaining balance of our liability owed to the IRS. My attorney computed that the approximate amount of the remaining liability was in the range of $235,000 to $250,000, including interest that had accrued from January 15, 2002 (in the case of

the 1988-1994 tax liabilities) and from January 5, 2004 (in the case of the 1982, and 1985-1987 tax liabilities).

9. In 2005 I applied to Wells Fargo Home Mortgage to obtain a mortgage on our home in Juneau. The loan process dragged on well into 2006 as a result of certain repairs and improvements that needed to be made to the property before we could proceed with the loan. We made these repairs, but by the time they were complete, the appraisal that had been done was too old and a new appraisal had to be ordered. Thereafter, the lender or title company required an "as built" survey, which further delayed the process.

10. During this time frame, the Court required the filing of periodic status reports to advise the Court of efforts to resolve this case. The government's attorney at the time was John Snyder. The Department of Justice filed several status reports advising the Court that my wife and I were pursuing a refinance of our property. In its Status Report As of September 1, 2005, the Department of Justice represented that "The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities." This figure was in the amount of $346,920.43, before crediting of the proceeds from the sale of the two SE Alaska parcels.

11. In its Status Report as of October 31, 2005, the Department of Justice again stated and represented to the Court that "The Department of Justice and Thomas and Marlene Mungle have obtained and agreed upon an updated payoff figure for Thomas and Marlene Mungle's total outstanding tax liabilities." This was a true and accurate statement of the status of the matter. The Department of Justice made similar representations to the Court in Status Reports as of November 4, 2005, December 29, 2005, March 31, 2006 and May 5, 2006.

12. By late Spring of 2006, we continued with efforts to finalize the refinance process. At approximately this time, the government's attorney, John Snyder, left the Department of Justice, and the current attorney, Goud P. Maragani took over for Mr. Snyder. Our attorney sought to obtain a payoff figure from the government's new attorney. The payoff amounts that Mr. Maragani obtained from the IRS and passed on to my attorney were inconsistent and varied widely. Those amounts varied from a low of $159,513.63 to a high of $578,000.00.

13. I now understand that the government contends that the Court's Order of June 11, 2003, which was based on and supported by the evidence provided by the United States in support of its Motion for Summary Judgment, was incorrect and does not include all interest the government contends is due. After three years of working toward a resolution of this matter, this new position on the part of the United States is potentially devastating to my wife and me. Since 2003, in agreement with the Department of Justice, we have pursued a course to assist and cooperate 0with the sale of the Hawaii condominium and Parcels A and B, and then to pursue the refinance of our Juneau home, which is also the site of my wife's insurance business. After reaching agreement on the payoff amount (which only would need to be updated to correct the interest computation to reflect payments from Parcels A and B), and after representing repeatedly that an agreement had been reached, the government now contends that we are indebted to the IRS in the amount of nearly $600,000. We relied on the Court's two Orders establishing our liability and on the statements and representations made by the government and its representatives in this case and for over three years pursued a course of action that would result in our being able to once and for all pay off the balance of the liability. Now, after more than three years, we are faced with a potential liability that is far in excess of our ability to pay and

which is contrary to representations that the government has made for well over one year, both to our attorney and to the Court.

14. My wife and I relied on the statements of the Department of Justice made to our attorney and in the Status Reports that it filed with the Court that an agreement had been reached between us and the Department of Justice regarding the payoff figure for our tax liabilities. That agreement put the remaining amount of tax liability between $235,000 and $250,000, with the only detail being the need for an updated interest computation form the dates of January 15, 2002 on a portion of the liabilities and from January 15, 2004, on the remaining portion of the liabilities. In reliance on these statements, we reasonably believed that a resolution to the issues in this case had been worked out and that once we arranged for a refinance of our Juneau house we would be in a position to pay the approximately $235,000 to $250,000 remaining due and owing to the government, thereby resolving this lawsuit. Because of the statements that were made, we did not pursue other finance or loan options that were available to us. We simply believed that a refinance that would generate proceeds of approximately $250,000 would be all that was needed to resolve this matter.

15. We contemplated and knew that interest would accrue on the $151,330.40 amount from January 15, 2002, and we contemplated and knew that interest would accrue on the $427,158.15 from January 5, 2004, but that the proceeds from the sale of the Hawaii condominium and Parcels A and B would also be credited. We did not contemplate or know that the government would reverse itself and contend now, some three-and-one-half years after entry of the Order on the government's motion for summary judgment, that we owe several hundred thousand dollars in additional interest, and that that interest has continued to compound and increase our tax debt.

16. If the Court grants the United States' motion to "correct" the June 11, 2003, Order, we will have no ability to pay in full what amounts to interest on our tax liabilities and we will lose our home and place of business. This is the result of a change in the position taken by the government in this case and is contrary to the representations and agreements reached between us (through our attorney) and the Department of Justice, Tax Division.

EXECUTED under penalty of perjury this 13th day of December, 2006, at Juneau, Alaska.

THOMAS R. MUNGLE